ROOFING & SHEET METAL SERV-
ICES, INC., Plaintiff-Appellant,

v.

LA QUINTA MOTOR INNS, INC.,
Defendant-Appellee.

No. 81–7639.

United States Court of Appeals,
Eleventh Circuit.

Oct. 21, 1982.

Hand, Arendall, Bedsole, Greaves & Johnston, J. Hodge Alves, III, Mobile, Ala., A. Wayne Davis, Little Rock, Ark., L. Lynn Hogue, College of Law, Ga. State Univ., for plaintiff-appellant.

James Tarlton, III, Gregory C. Buffalow, Mobile, Ala., for defendant-appellee.

Before RONEY and HATCHETT, Circuit Judges, and WISDOM,* Senior Circuit Judge.

WISDOM, Circuit Judge:

This is a suit for breach of contract. Federal subject matter jurisdiction derives from the parties' diversity of citizenship. 28 U.S.C. § 1332(a)(1). The plaintiff, Roofing & Sheet Metal Services, Inc. (Roofing), appeals from an order of the United States District Court for the Southern District of Alabama, granting summary judgment for the defendant, LaQuinta Motor Inns, Inc. (LaQuinta). Roofing also challenges an earlier order transferring the case to that court from the Western District of Arkansas, the forum in which it initially sued. To the extent Roofing asks us to review the transfer order, we lack appellate jurisdiction and dismiss the appeal. Because we find, on the merits, that LaQuinta has not established its right to judgment as a matter of law, we vacate the summary judgment and remand for further proceedings.

* Honorable John Minor Wisdom, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

## I.

Roofing brought this action in the United States District Court for the Western District of Arkansas on November 3, 1980, alleging that LaQuinta had failed to pay $23,310 of $39,700 due for materials and service under a contract to reroof LaQuinta's motor inn in Mobile, Alabama.

Roofing is incorporated under the laws of Arkansas and has its principal place of business in Pulaski County, Arkansas. LaQuinta is incorporated under the laws of Texas and owns property in several states, including Arkansas. According to Roofing, the contract giving rise to its cause of action was negotiated and executed at the LaQuinta Motor Inn in Pulaski County, Arkansas. LaQuinta contends that its agent, Paul Jarrell, signed the contract in San Antonio, Texas. This factual dispute is of critical importance. See Part III of this opinion.

On November 24, 1980, LaQuinta moved to dismiss the action, alleging that the district court lacked personal jurisdiction, that the Western District of Arkansas was an inconvenient forum, and that the contract is unenforceable because Roofing has not qualified to do business in Alabama as required by Ala.Code §§ 10–2–254, 10–2–270 (1975),[1] or obtained a contractor's license, as required by Ala.Code § 40–12–84 (1975).[2] In its response to the motion, Roofing alleged, concerning personal jurisdiction, that LaQuinta had a registered agent for service of process in Arkansas and that the cause of action arose from a contract executed in Arkansas. Concerning venue in Arkansas, Roofing argued that LaQuinta had not adduced "the necessary proof of substantial hardship" that would require dismissal. Roofing alleged, further, that it had complied with Alabama's qualification and licensing requirements.

Roofing requested a hearing on the motion to dismiss, but the district court disposed of it without one. The court expressed "serious reservations concerning the dismissal of the complaint on jurisdictional

---

1. Ala.Code § 10 2 254 (1975) provides, in pertinent part:

All contracts or agreements made or entered into in this state by foreign corporations which have not qualified to do business in this state shall be held void at the action of such foreign corporation ...; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity; .... In all actions against such foreign corporation, ... the foreign corporation ... shall be held to be estopped from setting up the fact that the contract or agreement was so made in violation of law.

Ala.Code § 10 -2–270(1) (1975) provides:

The term "foreign corporation," as used in this division, shall mean:

(1) Any bank or other corporation now or hereafter organized or existing under the laws of any state of the United States other than the state of Alabama. . . .

In support of its motion, LaQuinta submitted a certified statement by the Secretary of State of Alabama, that "an examination of the corporation records on file in this office discloses no record of a corporation by the name Roofing and Sheet Metal Services, Inc. or Roofing and Sheet Metal Services, Incorporated".

2. Ala.Code § 40-12-84 (1975) provides, in pertinent part:

Any person, firm or corporation accepting orders or contracts for doing any work on or in any building or structure requiring the use of paint, stone, brick, mortar, wood, cement, structural iron or steel, sheet iron, galvanized iron, metallic piping, tin, lead, electric wiring, or other steel or any other building material ... shall be deemed a contractor. Every contractor shall procure from the probate judge of the county in which he has his principal office a license to carry on the business of a contractor; provided, that if such contractor has no such office in this state, then he shall procure such license from the probate judge of the county where the contract is to be performed. Every such contractor shall pay a license tax to be ascertained on the basis of the gross amount of all orders or contracts accepted, exclusive of orders or contract pertaining to state or county road and bridge projects. . . .

LaQuinta submitted a notarized statement by the Privilege License Supervisor of the Motor Fuels and Miscellaneous Tax Division of the Alabama Department of Revenue, that "Roofing and Sheet Metal Services, Inc. or Roofing and Sheet Metal Services has not been licensed in Mobile County under § 40–12–84/Construction Companies or Contractors for the license years of 1977–78, 1978–79, and 1979-80". Although § 40–12–84 does not by its terms render any contract unenforceable, LaQuinta argues that a contract to do unlicensed work is void as against public policy.

grounds". It found, however, that Alabama would be a more convenient forum for trial on the merits, since the case would "require investigation into the work performed in Alabama and resolution of legal questions under Alabama law." Treating LaQuinta's motion as one to transfer to a more convenient forum, the court transferred the case to the Southern District of Alabama and did not consider LaQuinta's arguments concerning the Alabama licensing and qualification statutes.

LaQuinta raised these arguments again in the district court in Alabama, in a motion for summary judgment. The motion adopted by reference the affidavits and exhibits submitted with the earlier motion to dismiss. Roofing filed no response to the motion for summary judgment, and on June 30, 1981, the district court granted the motion, finding that Roofing had neither qualified to do business in Alabama as a foreign corporation nor obtained a contractor's license. On July 20, 1981, Roofing filed a motion for an extension of time in which to file a motion for reconsideration or a new trial under Fed.R.Civ.P. 59. The court denied the motion, relying on Fed.R.Civ.P. 6(b),[3] and Roofing brought this appeal.

Roofing has apparently abandoned its contention that it was qualified and licensed to do business in Alabama.[4] It argues, rather, that the Alabama licensing and qualification statutes do not govern the case, because the district court was bound by the choice of law rules of Arkansas, the initial forum, and Arkansas courts would not apply the Alabama statutes. Roofing also challenges the order of the district court in Arkansas transferring the case, and we will address this challenge first.

We note at the outset that decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent in this Circuit. *Bonner v. City of Prichard,* 11 Cir. 1981, 661 F.2d 1206, 1207.

## II. *The Transfer Order*

█ The power of the Arkansas district court to transfer the case to Alabama derives from 28 U.S.C. § 1404(a), which provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought". The determination whether the circumstances warrant transfer under § 1404(a) is "peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation". *Time, Inc. v. Manning,* 5 Cir. 1966, 366 F.2d 690, 699 (quoting *Lykes Brothers Steamship Co. v. Sugarman,* 2 Cir. 1958, 272 F.2d 679, 680). Accordingly, the decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion. *In re McDonnell-Douglas Corp.,* 5 Cir. 1981, 647 F.2d 515, 516; *Marbury-Pattillo Construction Co. v. Bayside Warehouse Co.,* 5 Cir. 1974, 490 F.2d 155, 157–58. *See also* 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3847, at 235–37 (1976). The appellant contends that the order transferring the case was an abuse of discretion, because it was entered without a hearing and because the circumstances did not justify it. The appellant also contends that the court in Arkansas abused its discretion by suggesting, in the order, that Alabama law governs the case; this suggestion, according to the appellant, tainted the judgment of the transferee court in Alabama. We do not reach the merits of these contentions, however, because we lack jurisdiction to review

---

**3.** Fed.R.Civ.P. 6(b) provides, to the extent pertinent here, that the district court "may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (d), and (e), and 60(b), except to the extent and under the conditions stated in them". Fed.R.Civ.P. 59(b), (d), and (e), require that a motion for a new trial, a *sua sponte* order of a new trial, or a motion to alter or amend a judgment must be filed within 10 days of the entry of judgment.

**4.** With its response to LaQuinta's motion to dismiss, Roofing submitted a copy of a building license and permit issued by the City of Mobile for the reroofing work on the LaQuinta Motor Inn. The document was in the name of LaQuinta, however, and does not seem to satisfy the statutory requirements quoted in notes 1 and 2.

the decision of a district court embraced by the Eighth Circuit.

Congress has not given us jurisdiction to review decisions of district courts outside this Circuit. Specifically, as 28 U.S.C. § 1294 provides, "Appeals from reviewable decisions of district and territorial courts shall be taken to the courts of appeals as follows: (1) From a district court of the United States to the court of appeals for the circuit embracing the district". 28 U.S.C. § 1294(1).[5] No relevant statute confers broader territorial jurisdiction than § 1294(1).[6] Accordingly, the Fifth Circuit has held that it lacks appellate jurisdiction to review the decision of a district court in another circuit. *In re Corrugated Container Anti-Trust Litigation,* 5 Cir. 1980, 620 F.2d 1086, 1090–91, *cert. denied,* 1981, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827; *accord, General Electric Co. v. Byrne,* 7 Cir. 1979, 611 F.2d 670, 672 (per curiam); *MacNeil Brothers v. Cohen,* 1 Cir. 1959, 264 F.2d 186, 187 (per curiam) (dictum).

The *Corrugated Container* case did not involve an order transferring a case under § 1404(a); it involved a contempt order by a judge of the United States District Court for the Southern District of Texas, acting as a judge of the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1407(b) in the context of multidistrict litigation. We see no principled basis for distinguishing that case, however, and both the Fourth and Seventh Circuits have rejected, on jurisdictional grounds, challenges to transfer orders by district courts in other circuits. *Linnell v. Sloan,* 4 Cir. 1980, 636 F.2d 65, 67; *Illinois Tool Works, Inc. v. Sweetheart Plastics, Inc.,* 7 Cir. 1971, 436 F.2d 1180, 1188, *cert. dismissed,* 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722. As the District of Columbia Circuit has said, when a case is transferred between circuits, "it is well established that a transferee court cannot directly review the transfer order itself". *Starnes v. McGuire,* D.C.Cir.1974, 512 F.2d 918, 924 (en banc);[7] *accord, Technitrol v. McManus,* 8 Cir. 1968, 405 F.2d 84, 87, *cert. denied,* 1969, 394 U.S. 997, 89 S.Ct. 1591, 22 L.Ed.2d 775. Although the Second and Ninth Circuits have expressed a contrary view, *American*

**5.** It bears emphasis that, as the language of § 1294(1) establishes, the provision applies to all "reviewable" decisions of the district courts, not only those that are immediately appealable. The distinction between reviewable and appealable decisions is axiomatic. *See* 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 110.01, at 47 (2d ed. 1982).

**6.** Although the parties have not raised the question of appellate jurisdiction, we must consider it on our own motion. *See Brown Shoe Co. v. United States,* 1962, 370 U.S. 294, 305, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510; *Pettinelli v. Danzig,* 5 Cir. 1981, 644 F.2d 1160. Our research has led us to no authority suggesting that § 1294 is anything other than a limitation on appellate jurisdiction, and the Fifth Circuit has specifically treated it as one. *In re Corrugated Container Anti-Trust Litigation,* 5 Cir. 1980, 620 F.2d 1086, 1090–91, *cert. denied,* 1981, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827; *accord, Linnell v. Sloan,* 4 Cir. 1980, 636 F.2d 65, 67; *MacNeil Bros. v. Cohen,* 1 Cir. 1959, 264 F.2d 186, 187 (dictum); *see also In re Corrugated Container Antitrust Litigation,* D.C.Cir.1981, 662 F.2d 875, 879; *Stoddard Lumber Co. v. Marshall,* 9 Cir. 1980, 627 F.2d 984, 985; *Wood v. Hoy,* 9 Cir. 1959, 266 F.2d 825, 827. Section 1294 is included in Part IV of Title 28, "Jurisdiction and Venue", and more specifically, in Chapter 83, which otherwise in-cludes only §§ 1291 and 1292, provisions governing appellate jurisdiction. The language of § 1294, which specifies the circuits in which appeals "shall be taken", arguably suggests that it is no more than a procedural requirement imposed on the appellant, which the appellee may waive. This interpretation, however, is highly implausible. Section 1294 is based on 28 U.S.C. § 225(d) (1940), originally enacted in 1925, Act of February 13, 1925, ch. 229, Pub.L.No.68–4115, § 128(d), 43 Stat. 936, 936. *See* H.R.Rep. 308, 80th Cong., 1st Sess. (Appendix: Reviser's Notes), *reprinted in* 1948 U.S.Code Cong. & Ad.News 1692, 1830–31; J. Moore, Moore's Judicial Code Commentary ¶ 0.03(51), at 460 & n.27. The language of the old § 225(d) was jurisdictional, requiring that "review ... shall be in" the specified circuit. The legislative history of § 1294 does not suggest that any change was intended in this regard.

**7.** Although "transferee court" most often denotes the trial court to which a case is transferred, it is clear from the context of the quoted language and from the posture of the case before the District of Columbia Circuit that the court intended the term to embrace the court of appeals of the transferee circuit as well.

*Fidelity Fire Insurance Co. v. United States District Court,* 9 Cir. 1976, 538 F.2d 1371, 1377 n.4; *Magnetic Engineering & Manufacturing Co. v. Dings Manufacturing Co.,* 2 Cir. 1950, 178 F.2d 866, 869 (Hand, J.), we know of no case in which either circuit, or any other, has in fact reviewed a transfer order issued by a district court in another circuit.[8] Leading commentators agree that a transfer between circuits is not reviewable by the court of appeals for the transferee circuit. *See* 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice, ¶ 110.13[6], at 177–79 (2d ed. 1982); 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3846, at 230, § 3855, at 302 (1976).

The appellant argues .that the present appeal is its only opportunity for review of the transfer order, which is not a final order within the meaning of 28 U.S.C. § 1291 and therefore was not immediately appealable to the Eighth Circuit. We disagree. Although the transfer order was, as we see it, probably not appealable to the Eighth Circuit, *see Garner v. Wolfinbarger,* 5 Cir. 1970, 433 F.2d 117, 120; *but see Katz v. Carte Blanche Corp.,* 3 Cir. 1974, 496 F.2d 747, 755–56, *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125, we consider that the appellant had the opportunity to secure appellate review. While we do not suggest that the existence of alternative routes to appellate review is necessary to our holding that we lack appellate jurisdiction, we discuss the alternatives to provide some guidance to litigants confronted with that holding.

▮ The All Writs Act, 28 U.S.C. § 1651, empowers the courts of appeals to issue extraordinary writs, such as mandamus and prohibition, in aid of their jurisdiction. There is substantial disagreement among the circuits, and some apparent confusion within the respective circuits, concerning the appropriate role of mandamus as a remedy for abuses of discretion by district courts in deciding motions under § 1404(a). *See generally* 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3855, at 307–19 (1976). Commentators have generally not favored the use of mandamus for this purpose. *See id.* at 303; Note, Appealability of § 1404(a) Orders: Mandamus Misapplied, 67 Yale L.J. 122 (1957); *see also A. Olinick & Sons v. Dempster Brothers,* 2 Cir. 1966, 365 F.2d 439, 446 (Friendly, J., concurring). The writ has rarely issued to correct a district court's abuse of discretion in granting or denying a motion to transfer. 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 110.13[6], at 175 (2d ed. 1982). Nevertheless, the view currently prevailing in the courts is that we have jurisdiction to entertain petitions seeking review of these discretionary decisions, and a majority of circuits have at least suggested that the writ might issue to correct an abuse of discretion in some circumstances.[9] In the circumstances of this case, we believe that a petition to the Eighth Circuit for an extraordinary writ would have afforded the appellant a substantial and realistic opportunity for appellate review of the district court's transfer order.

The courts of appeals have been particularly hospitable to petitions for mandamus challenging transfer orders entered, as the one in this case was, without a hearing.

---

8. It is possible that the Second Circuit would consider a retreat from this position in an appropriate case. *See D'Ippolito v. American Oil Co.,* 2 Cir. 1968, 401 F.2d 764 (per curiam).

9. *See, e.g., Starnes v. McGuire,* D.C.Cir.1974, 512 F.2d 918, 929 (en banc); *A. Olinick & Sons v. Dempster Bros.,* 2 Cir. 1966, 365 F.2d 439, 443–45; *General Tire & Rubber Co. v. Watkins,* 4 Cir. 1967, 373 F.2d 361 (en banc) (per curiam) (writ granted), *cert. denied,* 386 U.S. 960, 87 S.Ct. 1031, 18 L.Ed.2d 109; *In re McDonnell-Douglas Corp.,* 5 Cir. 1981, 647 F.2d 515; *Lemon v. Druffel,* 6 Cir. 1958, 253 F.2d 680, *cert.*

denied, 358 U.S. 821, 79 S.Ct. 34, 3 L.Ed.2d 62; *Butterick Co. v. Will,* 7 Cir. 1963, 316 F.2d 111; *Toro Co. v. Alsop,* 8 Cir. 1977, 565 F.2d 998 (per curiam), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802; *American Fidelity Fire Ins. Co. v. United States District Court,* 9 Cir. 1976, 538 F.2d 1371, 1375; *Texas Gulf Sulphur Co. v. Ritter,* 10 Cir. 1967, 371 F.2d 145. *But see In re Josephson,* 1 Cir. 1954, 218 F.2d 174; *Solomon v. Continental American Life Insurance Co.,* 3 Cir. 1973, 472 F.2d 1043, 1045–46.

*See Fine v. McGuire,* D.C.Cir.1970, 433 F.2d 499; see. *also Starnes v. McGuire,* D.C.Cir. 1974,. 512 F.2d 918, 929 (en banc); *Plum Tree, Inc. v. Stockment,* 3 Cir. 1973, 488 F.2d 754; *Swindell-Dressler Corp. v. Dumbauld,* 3 Cir. 1962, 308 F.2d 267. Moreover, because mandamus properly issues in aid of appellate jurisdiction, cases involving transfers between circuits are distinguishable from those in which motions to transfer are denied or transfer is ordered within a single circuit; in these cases, unlike those involving intercircuit transfers, appellate jurisdiction to review the district court's order is preserved on appeal from final judgment. *See McGraw-Edison Co. v. Van Pelt,* 8 Cir. 1965, 350 F.2d 361, 364 (Van Oosterhout, J., concurring); *In re Josephson,* 1 Cir. 1954, 218 F.2d 174, 181 & n*; *see also Maryland v. Soper,* 1926, 270 U.S. 9, 19, 46 S.Ct. 185, 70 L.Ed. 449, 456; *D'Ippolito v. American Oil Co.,* 2 Cir. 1968, 401 F.2d 764, 765 (per curiam).

The decisions of the Eighth Circuit give us no reason to believe it would be less than fully responsive to these concerns. That court, it is true, has articulated a strict standard for mandamus relief from decisions of § 1404(a) motions, stating that the writ will issue only to correct "manifest judicial arbitrariness". *Toro Co. v. Alsop,* 8 Cir. 1977, 565 F.2d 998, 1000 (per curiam) (quoting *McGraw-Edison Co. v. Van Pelt,* 8 Cir. .1965, 350 F.2d 361, 363 (en banc) (per curiam)), *cert. denied,* 1978, 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802; see *also Technitrol, Inc. v. McManus,* 8 Cir. 1968, 405 F.2d 84, 87, *cert. denied,* 1969, 394 U.S. 997, 89 S.Ct. 1591, 22 L.Ed.2d 775. The *McGraw-Edison* case, however, in which this standard originated, involved an order denying a transfer, and review would therefore have been available on appeal from final judgment. The court's opinion also establishes that the district court had held a hearing on the motion. 350 F.2d at 363. *Technitrol* involved similar facts, and the court specifically referred to the possibility of review on

appeal from a final judgment, 405 F.2d at 88. After having decided *Technitrol,* the Eighth Circuit has twice denied the writ in cases involving transfers to districts in other circuits, but in neither case did the petitioner allege that the case had been transferred without a hearing. *See Toro Co. v. Alsop,* 8 Cir. 1977, 565 F.2d 998 (per curiam), *cert. denied,* 1978, 435 U.S. 952, 98 S.Ct. 1579, 55 L.Ed.2d 802; *Wilkins v. Erickson,* 8 Cir. 1973, 484 F.2d 969. In *Wilkins,* moreover, the court applied a less stringent standard than that usually enunciated; stating that "[m]andamus is available in this circuit for review of a § 1404(a) transfer order ... when the writ is sought to rectify a clear abuse of discretion". 484 F.2d at 971 (citing *Technitrol* ).

▮ Accordingly, the Eighth Circuit has in fact granted a writ of prohibition to prevent a transfer from the circuit on the ground that the transfer was a "clear abuse of discretion". *United States v. Lord,* 8 Cir. 1976, 542 F.2d 719 (per curiam); *cf. United States v. McManus,* 8 Cir. 1976, 535 F.2d 460, 461, 463 (per curiam) (mandamus granted to correct "abuse of discretion" in transfer of criminal case out of circuit under Fed.R.Crim.P. 21(b), described as an "analogue" to § 1404(a)), *cert. denied,* 1977, 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769. The "clear abuse of discretion" standard is the one we apply in this Circuit in reviewing transfers within the Circuit on appeal from final judgment. *See Howell v. Tanner,* 5 Cir. 1981, 650 F.2d 610, 616, *cert. denied,* 1982, — U.S. —, —, 102 S.Ct. 1775, 1777, 72 L.Ed.2d 178, 180. In sum, the Eighth Circuit has not confronted a mandamus action involving a case transferred from the circuit without a hearing. Logic, policy, and precedent lead us to believe that if given the opportunity, that court would have reviewed the transfer order in this case under a standard similar to the one we would apply now if we had appellate jurisdiction.[10]

---

10. One potential hurdle to the use of mandamus in cases like this warrants our attention. When the files in a case are physically transferred to the transferee district, the transferor

court loses all jurisdiction of the case. *See In re Southwest Mobile Homes,* 5 Cir. 1963, 317 F.2d 65, 66 (per curiam); *Starnes v. McGuire,* D.C.Cir.1974, 512 F.2d 918, 924 (en banc). In

Apart from mandamus in the Eighth Circuit, the appellant could have secured appellate review by moving the district court in Alabama to retransfer the case to the Western District of Arkansas. Although, of course, a district court cannot perform an appellate function by directly reviewing the decisions of another district court, there is nothing to prevent the district court in Alabama from independently considering a motion to retransfer. This Court would naturally have jurisdiction to review the disposition of such a motion. Several circuits have suggested that a motion to retransfer in the transferee court is an appropriate means of preserving for appeal any objection to a transfer between circuits. *In re Nine Mile, Ltd.,* 8 Cir. 1982, 673 F.2d 242, 244 n.5; *Linnell v. Sloan,* 4 Cir. 1980, 636 F.2d 65, 67; *Starnes v. McGuire,* D.C.Cir.1974, 512 F.2d 918, 924 (en banc); *Illinois Tool Works v. Sweetheart Plastics, Inc.,* 7 Cir. 1971, 436 F.2d 1180, 1188, *cert. dismissed,* 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722; *D'Ippolito v. American Oil Co.,* 2 Cir. 1968, 401 F.2d 764, 765 (per curiam).

We do not say that the Eighth Circuit would have granted an extraordinary writ, that the district court in Alabama would have granted a motion to retransfer, or that we would have reversed a decision refusing to retransfer the case. To say this, we would have to decide the merits of the appellant's challenge to the transfer order, and this we have neither the jurisdiction nor the information to do. We can say, however, that the appellant did not want for opportunities to air its arguments before an appellate court, despite our lack of appellate jurisdiction. Because we lack appellate jurisdiction, we dismiss the appeal to the extent that it challenges the order transferring the case to the Southern District of Alabama.

### III. *The Choice of Law Issue*

We turn now to that part of the appeal over which we have jurisdiction, the challenge to the final order of the United States District Court for the Southern District of Alabama granting summary judgment for LaQuinta. *See* 28 U.S.C. §§ 1291, 1294(1). The appellant argues that the district court erred in applying the Alabama qualification and licensing statutes, Ala.Code §§ 10–2–254, 40–12–84 (1975), because Arkansas choice of law principles govern the case, and an Arkansas court would not have applied those statutes. Considering the case in its present posture, we agree. Although further proceedings in the district court may establish the applicability of these provisions, it was error to rely on them in granting summary judgment.

 LaQuinta argues that we should not consider Roofing's choice of law theory, because Roofing did not present that theory to the district court. "As a general principle of appellate review, we will not consider a legal issue or theory that was not presented to the trial court." *Bliss v. Equitable Life Assurance Society,* 5 Cir. 1980, 620 F.2d 65, 70. The decision whether to consider an argument first made on appeal, however, is "left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases". *Singleton v. Wulff,* 1976, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837. In the exercise of that discretion, we may pass on issues not

these circumstances, a mandamus action against the transferring judge would be a futile exercise. For this reason, the prevailing approach is to delay the physical transfer of the papers in a case long enough to allow an aggrieved party the opportunity to file a petition for mandamus. *See* 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3846, at 228–29 (1976). We do not know whether the appellant in this case had such an opportunity. Even if it did not, however, appellate review would probably have been available. The Eighth Circuit has used the writ of mandamus to correct a transfer that was too hasty, by ordering the transferring judge "to take every reasonable action possible in asking" the transferee court to return the files in the transferred case. *In re Nine Mile Ltd.,* 8 Cir. 1982, 673 F.2d 242, 244 n.5 (per curiam). In *Nine Mile Ltd.,* the court granted the writ without reference to the merits of any challenge to the transfer order itself. Although, in the present case, neither the Eighth Circuit nor any district court in it could compel the district court in Alabama to return the files, *see id.,* there is no reason to assume the transferee court would deny a request for their return.

raised below if "the ends of justice will best be served by doing so". *Empire Life Insurance Co. of America v. Valdak Corp.,* 5 Cir. 1972, 468 F.2d 330, 334. Specifically, we will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. *Martinez v. Mathews,* 5 Cir. 1976, 544 F.2d 1233, 1237. Roofing has raised no new factual questions, and as our discussion below will establish, the record, viewed in the light appropriate on appeal from summary judgment, supports its legal argument. A refusal to consider that argument could result in a miscarriage of justice.

Any wrong result resting on the erroneous application of legal principles is a miscarriage of justice in some degree.[11] In this case, additional factors favor the appellant. The record reflects some confusion about the appellant's ability to retain local counsel in Alabama after the transfer. This may have played some part in the appellant's failure to raise the issue below. Moreover, Roofing's choice of law theory is not strictly a new legal issue or an "afterthought". *See West India Industries, Inc. v. Tradex,* 5 Cir. 1981, 664 F.2d 946, 951. Roofing sued initially in Arkansas and might reasonably have expected that state's choice of law rules to govern the case from the outset. Roofing is here asserting not a new theory of recovery but a rebuttal to LaQuinta's defense under the Alabama licensing and qualification statutes. When the plaintiff, in apparent good faith, has pursued the same theory of recovery throughout, when an erroneous summary judgment resulted from the plaintiff's failure to point out the legal insufficiency of the affidavits supporting a defensive theory, and when that failure may have resulted from the plaintiff's

inability to retain local counsel after the case was transferred without a hearing, we consider it unwise, in the exercise of our discretion, to ignore the plaintiff's valid rebuttal on appeal. Rather, we must be mindful of our "duty to apply the *correct* law". *Empire Life Insurance Co. of America v. Valdak Corp.,* 5 Cir. 1972, 468 F.2d 330, 334 (emphasis in original).

Consideration of legal arguments not raised in the district court is especially appropriate on appeal from summary judgment. The rule against consideration of new issues derives primarily from "the needs of judicial economy and the desirability of having all parties present their claims in the court of first instance". *Id.* (citing *Hormel v. Helvering,* 1941, 312 U.S. 552, 556–60, 61 S.Ct. 719, 721–23, 85 L.Ed. 1037, 1040–43). It also reflects a concern for avoiding prejudice to the parties. *Bliss v. Equitable Life Assurance Society,* 5 Cir. 1980, 620 F.2d 65, 70. Remand after reversal of summary judgment does not seriously impair judicial economy, because, unlike remand after a full trial, it does not involve the district court in redundant proceedings. The party prevailing on appeal must still present its arguments, with the necessary evidentiary support, to the trial court if it is ultimately to prevail. And the burden on the party that initially won summary judgment is not comparable to that involved in remand after the time and expense involved in a full trial. Accordingly, cases in which the Former Fifth Circuit has declined to consider arguments raised for the first time on appeal have generally not involved appeals from summary judgment. *See, e.g., id.; Guerra v. Manchester Terminal Co.,* 5 Cir. 1974, 498 F.2d 641; *D. H. Overmyer Co. v. Loflin,* 5 Cir. 1971, 440 F.2d 1213, 1215, *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30

---

11. It is not clear precisely how severe a potential miscarriage of justice must be to justify consideration of arguments not raised in the district court. When the Former Fifth Circuit has found the necessary miscarriage of justice lacking, however, it has frequently either expressed the view that the argument raised is weak on its merits or noted that the appellant would have another opportunity to make the argument to the district court. *See, e.g., McCrary v. Poythress,* 5 Cir. 1981, 638 F.2d 1308, 1314–15, *cert. denied,* 454 U.S. 865, 102 S.Ct. 325, 70 L.Ed.2d 165; *Guerra v. Manches-*

L.Ed.2d 90; [12] cf. McCrary v. Poythress, 5 Cir. 1981, 638 F.2d 1308, 1314 (appeal from dismissal of complaint; modified to dismissal without prejudice), cert. denied, 454 U.S. 865, 102 S.Ct. 325, 70 L.Ed.2d 165. In view of all these considerations, we will consider the merits of Roofing's choice of law argument.[13]

### A. Applicability of Arkansas Choice of Law Rules

■ A federal court in a diversity case must generally apply the state law that would be applied by the courts of the state in which it sits. Klaxon Co. v. Stentor Electrical Manufacturing Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. When a defendant moves successfully for a transfer to a more convenient forum under 28 U.S.C. § 1404(a), however, the transferee court must apply the same state law that the transferor court would have applied. Van Dusen v. Barrack, 1964, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945; Loughan v. Firestone Tire & Rubber Co., 5 Cir. 1980, 624 F.2d 726. See generally Note, Choice of Law in Federal Court After Transfer of Venue, 63 Corn.L.Rev. 149 (1977). In Van Dusen, the Supreme Court considered the legislative background to § 1404(a), and several cases interpreting it, and concluded

that Congress did not intend to deprive plaintiffs of "whatever advantages may flow from the state laws of the forum they have initially selected". 376 U.S. at 633, 84 S.Ct. at 818, 11 L.Ed.2d at 959. Apart from the danger of forum-shopping by defendants, the Court was concerned that the principles underlying Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, would be violated if a change of venue could result in a disposition that could not have been achieved if the action were initially brought in state court. 376 U.S. at 637–38, 84 S.Ct. at 819–20, 11 L.Ed.2d at 961–62. Accordingly, the court said that "[a] change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms". Id. at 638, 84 S.Ct. at 820, 11 L.Ed.2d at 962–63 (footnote omitted).

The rule of Van Dusen, as the quoted language suggests, is not necessarily applicable to every case transferred under § 1404(a).[14] And it is possible that further proceedings in the district court will produce evidence of facts making it inapplicable here. Specifically, Van Dusen does not govern cases in which the transferor court lacked personal jurisdiction of the defendant; the record in this case presents a po-

---

*ter Terminal Co.,* 5 Cir. 1974, 498 F.2d 641, 658 59.

**12.** The *Overmyer* case involved a claim and a counterclaim. The district court granted summary judgment for the defendant on the plaintiff's claim and plenary judgment for the defendant on its counterclaim. On appeal, the plaintiff asserted a theory it had not raised in the district court. The Court of Appeals rejected the theory, on its merits, as a ground for recovery on the plaintiff's own claim. To the extent the plaintiff's theory might have served as a defense to the counterclaim, the Court declined to consider it on the ground that it had not been presented to the district court at trial.

**13.** We note, in passing, that *Erie v. Tompkins,* 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, overruled *Swift v. Tyson,* 16 Pet. 1, 10 L.Ed. 865 (1842), although the principle for which *Erie v. Tompkins* stands was not argued to the Supreme Court. That may have been a special situation. The *Erie* principle had been for several years in the judicial atmosphere pervading the Supreme Court.

**14.** The Supreme Court expressly withheld judgment on the applicability of *Van Dusen* to cases in which the plaintiff rather than the defendant seeks transfer or the state courts of the transferor forum would have dismissed the action on the ground of *forum non conveniens.* 376 U.S. at 638, 84 S.Ct. at 820, 11 L.Ed.2d at 962. The concern for uniformity of results achievable by suing in state and federal courts, however, is equally pressing when transfer is not on the defendant's motion. Accordingly, in this Circuit *Van Dusen* governs when the court transfers a case on its own motion with the agreement of the plaintiff, *Bott v. American Hydrocarbon Corp.,* 5 Cir. 1971, 441 F.2d 896, 899, and when transfer is on the plaintiff's motion, *see Ellis v. Great Southwestern Corp.,* 5 Cir. 1981, 646 F.2d 1099, 1108–09; *see also* Note, Choice of Law in Federal Court After Transfer of Venue, 63 Corn.L.Rev. 149, 154–58 (1977); *But see Carson v. U-Haul Co.,* 6 Cir. 1970, 434 F.2d 916, 918.

tentially disputed question of fact concerning whether the United States District Court for the Western District of Arkansas had personal jurisdiction of LaQuinta.[15]

In *Ellis v. Great Southwestern Corp.,* 5 Cir. 1981, 646 F.2d 1099, the Fifth Circuit held that "following a section 1404(a) transfer from a district in which personal jurisdiction over the defendant could not be obtained, the transferee court must apply the choice of law rules of the state in which it ·sits". *Id.* at 1110; *accord, Reyno v. Piper Aircraft Co.,* 3 Cir. 1980, 630 F.2d 149, 165, *rev'd on other grounds,* 1981, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419; *Martin v. Stokes,* 1980, 623 F.2d 469.[16] The court's opinion reasoned that if *Van Dusen* governed such cases, plaintiffs would be encouraged to engage in impermissible forum shopping; a plaintiff could sue in a forum lacking personal jurisdiction, "for the purpose of capturing the law of that jurisdiction for transportation to the jurisdiction in which service can be obtained". 646 F.2d at 1108 (quoting 1 J. Moore, Federal Practice ¶ 0.145[4.5] at 1608–09 (2d ed. 1980)). *See also Martin v. Stokes,* 623 F.2d at 471–44. Such abuses by plaintiffs would be precisely the type that *Van Dusen* sought to prevent on the part of defendants. A rule allowing them would defeat the goal of uniformity articulated in *Erie* and elaborated in *Van Dusen,* by producing different outcomes, depending on whether the action is initially brought in state or federal court.

In *Ellis,* the transfer order at issue was based on the lack of personal jurisdiction; in the present case, the transferor court

acted on the grounds of convenience and justice, without reaching the question of personal jurisdiction. If personal jurisdiction was lacking, however, the district court's choice to rely on different grounds could not render the reasoning of *Ellis* inapplicable. A forum lacking personal jurisdiction will often be inconvenient as well, and the very abuses *Ellis* sought to prevent would occur if a plaintiff were able to "capture" the law of an impermissible forum by virtue of the court's choice to transfer the case for one available reason rather than another. As the Third Circuit has suggested, application of a state's choice of law rules to a party over whom its courts cannot obtain personal jurisdiction might present problems of a constitutional dimension. *Reyno v. Piper Aircraft Co.,* 3 Cir. 1980, 630 F.2d 149, 164–65, *rev'd on other grounds,* 1981, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419. Although we have not adopted, and do not now find it necessary to adopt, the position that such a case would squarely present a constitutional violation,[17] we note that whatever constitutional background may exist, it is equally present whenever the transferor court lacks personal jurisdiction, whether or not this is the basis for the transfer order.

Accordingly, if LaQuinta, in further proceedings, establishes that the United States District Court for the Western District of Arkansas lacked personal jurisdiction over it, Arkansas choice of law rules will not govern the case. For present purposes, however, LaQuinta has not made the

---

**15.** LaQuinta moved that court to dismiss the complaint for lack of personal jurisdiction, but the court did not reach the issue. LaQuinta's brief on appeal alleges that the contract at issue was not executed in Arkansas, which might be sufficient to deprive the federal court in Arkansas of personal jurisdiction. LaQuinta has not submitted any evidence on this point, however.

**16.** *Stokes* involved a transfer under 28 U.S.C. § 1406(a), which governs actions brought in an improper venue, rather than § 1404(a), which governs actions brought in an inconvenient venue. Nevertheless, the conclusion that *Van Dusen* did not govern in that case rested on the nature of the transfer, which was based on the

transferor court's lack of personal jurisdiction. In the Sixth Circuit, a transfer on this ground can be effected only under § 1406(a). *See* 623 F.2d at 474. In this Circuit, a court lacking personal jurisdiction of the defendant may transfer the case under either § 1404(a) or § 1406(a). *Koehring Co. v. Hyde Constr. Co.,* 5 Cir. 1963, 324 F.2d 295; *accord, United States v. Berkowitz,* 3 Cir. 1964, 328 F.2d 358, 361, *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32.

**17.** An enlightening discussion of constitutional limitations on the application of state law in particular cases appears in Reese, Legislative Jurisdiction, 78 Colum.L.Rev. 1587 (1978).

necessary showing.[18] Roofing's complaint alleged that the contract at issue was executed in Arkansas, and this is probably sufficient to establish personal jurisdiction over the defendant in a federal court in Arkansas in any action arising from the contract, Fed.R.Civ.P. 4(e); Arkansas Stats. Ann. § 27–2502(C) (1979).[19] LaQuinta has submitted no affidavit or other document refuting this allegation, and in reviewing a grant of summary judgment for the defendant, we take as true the allegations of the complaint to the extent that no affidavit contradicts them.[20] *See Adickes v. Kress,* 1970, 398 U.S. 144, 153–61, 90 S.Ct. 1598, 26 L.Ed.2d 142; *see also Potrero Hill Community Action Committee v. Housing Authority,* 9 Cir. 1969, 410 F.2d 974, 974. We therefore must vacate the district court's judgment, unless Arkansas choice of law rules would produce the result reached by the district court. As the ensuing discussion will establish, this question may also turn on whether the contract was signed in Arkansas.

### B. Arkansas Choice of Law

The appellant argues that Arkansas courts considering multistate contract problems apply the "validation rule" first proposed by Professor Lorenzen in 1921. Lorenzen, Validity and Effect of Contracts in the Conflict of Laws, Part 2, 30 Yale L.J. 655, 673 (1921). Under this rule, an Arkansas court would apply the law of a state (among those having significant connections with the contract) that would uphold the contract, at least if enforcement of the contract does not "run counter to some definitely existing policy" of the forum, *see* Note, Conflict of Laws and the Validity of Contracts, 20 Iowa L.Rev. 607, 616 (1935). According to the appellant, Texas, Arkansas, and Alabama all have contacts with this case; they are, respectively, the residence of the defendant, the residence of the plaintiff and the state where the contract was made, and the state where the contract was to be performed. Since the law of neither Texas nor Arkansas renders a contract unenforceable for failure to qualify to do business in Alabama, the appellant argues, an Arkansas court must apply the law of one of those states to uphold the contract. We disagree.

Several Arkansas cases do indeed suggest a preference for validation. *E.g., Hutchingson v. Republic Finance Co.,* 1963, 236 Ark. 832, 370 S.W.2d 185, 186; *Cooper v. Cherokee Village Development Co.,* 1963, 236 Ark. 37, 364 S.W.2d 158, 162. Professor Leflar, formerly a member of the Arkansas Supreme Court and a well respected authority on conflicts of law, has said that the results in early Arkansas cases can be explained by this principle. R. Leflar, Arkansas Law of Conflict of Laws 212–16, 220 (1938). Recent Arkansas cases, however, have not emphasized the validation principle. *See, e.g., Tri-State Equipment Co. v.*

---

**18.** Because we hold that *Van Dusen* governs the case in its present posture, our discussion of the principles governing cases in which the transferor court lacks personal jurisdiction is not necessary to our decision of the case. The apparent existence of a real dispute over whether the court in Arkansas had personal jurisdiction prompts us to provide guidance to the district court, with an eye toward avoiding unnecessary multiple appeals.

**19.** It is, of course, conceivable that LaQuinta's contacts with Arkansas are not sufficient to satisfy federal constitutional standards for the exercise of personal jurisdiction. LaQuinta has submitted no evidence on this point, however, and for present purposes we must assume constitutional standards are satisfied.

**20.** When personal jurisdiction becomes an issue by virtue of a defendant's motion to dismiss, the plaintiff bears the burden of establishing, by *prima facie* evidence, that personal jurisdiction exists. *Product Promotions, Inc. v. Cousteau,* 5 Cir. 1974, 495 F.2d 483, 491. The burdens are allocated differently here, because the question of personal jurisdiction does not arise in the context of a motion to dismiss under Fed.R.Civ.P. 12(b)(2); it arises here as a necessary factual element of the defense on which the defendant based its motion for summary judgment.

By focusing on the appellant's allegation that the contract was signed in Arkansas, we do not mean to suggest that the transferor court necessarily lacked personal jurisdiction if it was signed elsewhere. Other bases for personal jurisdiction, not evident from the record as it now stands, may exist as well.

*Tedder,* 1981, 272 Ark. 408, 614 S.W.2d 938; *Standard Leasing Corp. v. Schmidt Aviation, Inc.,* 1979, 264 Ark. 851, 576 S.W.2d 181; *Yarbrough v. Prentice Lee Tractor Co.,* 1972, 252 Ark. 349, 479 S.W.2d 549.[21] And in at least one recent case, the Arkansas Supreme Court held a contract void under the law of a different state, without referring to either a lack of contacts with Arkansas or any Arkansas public policy. *Ladd v. Ladd,* 1979, 265 Ark. 725, 580 S.W.2d 696, 699–700. Accordingly, we cannot say that an Arkansas court would mechanically apply that body of state substantive law that would result in enforcement of the contract, although the presumed intent of the parties to enter an enforceable agreement may be one of several factors influencing choice of law in this case. *See Cooper v. Cherokee Village Development Corp.,* 1963, 236 Ark. 37, 364 S.W.2d 158, 162; Restatement (Second) of Conflict of Laws § 6(2)(d), (e); R. Leflar, American Conflicts Law § 150, at 310 (3d ed. 1977).

Ruling out choice of law theories is easier than ruling them in. As a federal district court sitting in Arkansas has observed, "there has been no consistency in Arkansas with respect to choice of law in determining validity and enforcement of contracts". *Credit Bureau Management Co. v. Huie,* E.D.Ark.1966, 254 F.Supp. 547, 554 (citing *Cooper v. Cherokee Village Development Co.,* 1963, 236 Ark. 37, 364 S.W.2d 158). The Arkansas Supreme Court, even while suggesting an inclination to apply the law that would validate a contract, has said that four different bases are used to determine what law governs the validity of multistate contracts: it has applied the law of the state in which the contract was made, the

law of the state in which it was to be performed, the law the parties intended to govern the contract, and the law of the state with the "most significant contacts" with the contract. *Cooper,* 364 S.W.2d at 161. As the district court put it in *Huie,* the best we can hope to do is "to make an intelligent and informed as possible a guess" as to what choice of law principles the Arkansas Supreme Court would apply in this case. Our best guess is that it would apply some version of the "most significant relationship" test.[22]

Several recent Arkansas cases have applied versions of this test. *See Tri-State Equipment Co. v. Tedder,* 1981, 272 Ark. 408, 614 S.W.2d 938; *Standard Leasing Corp. v. Schmidt Aviation, Inc.,* 1979, 264 Ark. 851, 576 S.W.2d 181; *see also Credit Bureau Management Co. v. Huie,* E.D.Ark. 1966, 254 F.Supp. 547, 554; *cf. Williams v. Carr,* 1978, 263 Ark. 326, 565 S.W.2d 400, 404 (tort case); *Wallis v. Mrs. Smith's Pie Co.,* 1977, 261 Ark. 622, 550 S.W.2d 453 (same). Accordingly, the cases have generally treated the state where the contract was made and the state where it was to be performed as considerations in the choice of law process, rather than as alternative and exclusive tests, as *Cooper* might suggest. *E.g., Yarbrough v. Prentice Lee Tractor Co.,* 1972, 252 Ark. 349, 479 S.W.2d 549; *Hutchingson v. Republic Finance Co.,* 1963, 236 Ark. 832, 370 S.W.2d 185, 186. They have also considered, as an important factor, the state in which the contract was negotiated. *See Yarbrough,* 252 Ark. at 353, 479 S.W.2d at 553; *Tri-State Equipment,* 272 Ark. at 409, 614 S.W.2d at 939. These contacts are among those enumerated in the Restatment (Second) of

---

**21.** The cited cases involved claims that the contracts in question were usurious under Arkansas law. Some commentators believe that usury laws present a unique problem in choice of law and are not governed by the same principles that apply to contracts generally. *See* R. Leflar, American Conflicts Law § 152, at 312 (3d ed. 1977). The Arkansas cases, however, do not articulate this distinction, and they rely on precedents and scholarly authority concerning contracts outside the setting of usury laws. *See* 576 S.W.2d at 184 (citing R. Leflar, American Conflicts Law § 147 (1968)); *see also Coo-*

*per v. Cherokee Village Development Co.,* 1963, 236 Ark. 37, 364 S.W.2d 158, 161–62. Although the American Law Institute's Restatement (Second) of Conflict of Laws (1969) includes a provision specifically governing choice of law in usury cases, *id.* § 203, the recent Arkansas cases have not referred to it.

**22.** We use the phrase "most significant relationship" rather than "most significant contacts" to establish that the quality, and not just the number, of contacts must be considered.

Conflict of Laws § 188(2). We think it not unlikely that in an appropriate case the Arkansas Supreme Court would consider the other contacts referred to in the *Restatement (Second)*, specifically, the location of the subject matter of the contract and domicile of the parties. *See id.* § 188(2)(d), (e). The federal court in *Huie* appears to have considered all the *Restatement (Second)* contacts, *see* 254 F.Supp. at 554, and we know of no Arkansas decision, in sixteen years, repudiating that case.

The weight to be assigned the various contacts presents an additional problem. The Arkansas Supreme Court has given great weight to the law of the state where the contract was negotiated. *E.g., Yarbrough v. Prentice Lee Tractor Co.,* 1972, 252 Ark. 349, 479 S.W.2d 549. It has also sometimes given great weight to the law of the state in which the contract was made. In one recent case, deviating from the "most significant relationship" approach, the court flatly held that "[t]he validity of the contract is determined by the place in which it was made". *Ladd v. Ladd,* 1979, 265 Ark. 725, 580 S.W.2d 696, 699; *see also Edwin F. Armstrong & Co. v. Ben Pearson, Inc.,* E.D. Ark.1967, 294 F.Supp. 163, 165, *aff'd,* 8 Cir. 1968, 404 F.2d 610; *Metropolitan Life Insurance Co. v. Kendall,* 1955, 225 Ark. 731, 284 S.W.2d 863, 864. On the other hand, when the place where the final contract was signed was fortuitous, the result of a mistake in the signing of the original contract elsewhere, the fortuitous signing was not regarded as of controlling importance. *Standard Leasing Corp. v. Schmidt Aviation, Inc.,* 1979, 264 Ark. 851, 576 S.W.2d 181, 182. In weighing these and other contacts, a court following the *Restatement (Second)* is not guided only by the quality of the contacts themselves, or by the relative weight ordinarily assigned to them, but also by general choice of law principles enumerated in § 6 of the *Restatement (Second)*. *See* Restatement (Second) § 188(1). These include the relevant policies of the forum, in this case Arkansas,[23] a consideration the Arkansas Supreme Court has given great weight in the area of tort law. *Wallis v. Mrs. Smith's Pie Co.,* 1977, 261 Ark. 622, 550 S.W.2d 453, 456–57. They also include the relevant policies of other interested states, in this case the policies underlying the Alabama qualification requirement. Restatement (Second) § 6(2)(c).[24]

We cannot say what result these guidelines will produce in this case, in further proceedings upon remand. Nor do we suggest that the facts as they develop will necessarily require the district court to decide whether Arkansas follows the *Restatement (Second)* in all its particulars. We can say, however, that on the record before us, LaQuinta has not discharged its burden of showing that the contract in this case was not "essentially ... an Arkansas contract, governed by Arkansas law", *Standard Leasing,* 576 S.W.2d at 184. LaQuinta's affidavits establish only that Alabama is the state in which the contract was to be performed and the location of the subject matter of the contract. Further proceedings may establish additional Alabama contacts; they may also, conceivably, establish considerations that would render these contacts sufficient to justify application of Alabama law. For present purposes, it is enough that no Arkansas case that we are aware of

---

**23.** Although Alabama is the forum in which this case was considered, *Van Dusen* requires that the federal court in that state treat the relevant policies of Arkansas as those of the forum. Otherwise, *Van Dusen's* goal of uniformity in diversity cases would be defeated.

**24.** Professor Leflar has suggested that courts generally do not respect the policies underlying qualification statutes of sister states but tend to enforce contracts that would not be enforceable in the state in which the plaintiff has failed to qualify. R. Leflar, American Conflicts Law § 258, at 517 (3d ed. 1977); *accord, Restatement (Second)* § 312. The Arkansas Supreme Court seems to be particularly inhospitable to defenses under qualification statutes in cases involving contracts with multistate contacts. In a recent case, it refused to apply Arkansas's own qualification requirement to a contract that was signed in Mississippi, on the ground that state qualification statutes may not affect transactions in interstate commerce. *Hough v. Continental Leasing Corp.,* 1982, 275 Ark. 340, 630 S.W.2d 19, 21.

**996**

has applied a foreign state's law on the basis of these contacts alone. In *Huie,* the district court found the forum's law inapplicable, although it was the state in which the contract was to be performed and the location of the subject matter of the contract, as well as the domicile of one of the parties. We follow that case in disposing of the present appeal.

### Conclusion

We lack appellate jurisdiction to review the order of the United States District Court for the Western District of Arkansas, transferring this case to the Southern District of Alabama. Considering the merits of the appellant's challenge to the final judgment of the transferee court, however, we conclude that LaQuinta has not, for purposes of summary judgment, discharged its burden of alleging facts that would justify avoidance of Arkansas choice of law rules. Assuming, as we therefore must, that Arkansas choice of law rules govern the case, LaQuinta has not alleged facts sufficient to justify application of Alabama substantive law. Although we express no opinion whether further proceedings will prove the Alabama licensing and qualification requirements applicable, it was error to rest summary judgment on them.[25]

The appeal is therefore DISMISSED IN PART, the judgment of the district court is VACATED, and the case is REMANDED for proceedings consistent with this opinion.

---

**25.** The appellant has raised an additional argument, which we do not consider in this opinion. According to the appellant, application of the Alabama qualification statute in this case is an unconstitutional burden on interstate commerce. Our disposition of the case on other grounds makes it unnecessary to consider the constitutional argument.