906 F.2d 524
 CONCERNED CITIZENS OF HARDEE COUNTY, etc., et al.,
Plaintiffs-Appellants,
v.
HARDEE COUNTY BOARD OF COMMISSIONERS, etc., et al.,
Defendants-Appellees.
CONCERNED CITIZENS OF HARDEE COUNTY, etc., et al.,
Plaintiffs-Appellants,
v.
HARDEE COUNTY SCHOOL BOARD, et al., Defendants-Appellees.
 No. 89-3436.
 United States Court of Appeals,
Eleventh Circuit.
 July 19, 1990.
As Amended Aug. 6, 1990.
 
 David M. Lipman, Miami, Fla., James A. Tucker, Florida Rural Legal Services, Inc., Fort Myers, Fla., for plaintiffs-appellants.
 Robert M. Fournier, Sarasota, Fla., Katharine I. Butler, University of South Carolina Law Center, Columbia, S.C., Gary Alan Vorbeck, Arcadia, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HATCHETT and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this voting rights class action, we are asked to determine whether the district court erred when it denied relief under section 2 et seq. of the Voting Rights Act of 1965. Finding (1) that the class of black and hispanic voters failed to satisfy the second element of a section 2 vote dilution claim, political cohesiveness, and (2) that the class's new theory of recovery is not properly before this court, we affirm the district court.
 
 FACTS
 
 2
 In 1980, Hardee County, in southwestern Florida, had a total population of 19,379. Of that number, 75.1 percent were white, 8.2 percent were black, and 16.7 percent were hispanic. Black citizens living in Hardee County are primarily concentrated in two residential areas, and hispanic residents are dispersed in pockets throughout the county. In February, 1988, Hardee County had 7,124 registered voters with blacks comprising 8 percent and hispanics comprising 5.1 percent.
 
 
 3
 The Hardee County Board of County Commissioners ("Commission") governs the county, and the Hardee County School Board ("School Board") operates the county's school system. Each body is composed of five members who serve staggered four-year terms. Candidates run for the seat on the Commission or School Board that bears the number of the district in which they live. In both primary and general elections, the entire county electorate votes for one candidate from each residential district. To be elected, candidates must receive a plurality of the vote in a county-wide general election.
 
 
 4
 The only two blacks to ever run for county-wide office were defeated. No hispanic has ever run for county-wide office.
 
 PROCEDURAL HISTORY
 
 5
 In 1986, the Hardee County Branch of the National Association for the Advancement of Colored People ("NAACP"), Concerned Citizens of Hardee County, and individual black and hispanic class representatives (the "class") filed separate actions against the Commission and the School Board (collectively "Hardee County"). Among other things, the class alleges that the at-large election systems used for electing the Commission and School Board unlawfully dilute the combined voting strength of blacks and hispanics in violation of section 2 of the Voting Rights Act of 1965, as amended. 42 U.S.C. Sec. 1973. The class also alleges that the School Board's at-large election system offends the fourteenth and fifteenth amendments to the Constitution. In both actions, the class seeks declaratory and injunctive relief against at-large county-wide elections for members of the Commission and the School Board.
 
 
 6
 On June 17, 1986, the district court certified the case against the Commission as a class action consisting of all black and hispanic residents of Hardee County. Fed.R.Civ.P. 23(b)(2). On November 12, 1986, the case against the School Board was also certified as a class action, and on December 2, 1986, the district court consolidated these lawsuits. In March, 1989, following a non-jury trial, the district court denied the class relief concluding that blacks and hispanics in Hardee County are not politically cohesive.
 
 CONTENTIONS
 
 7
 The class does not challenge the district court's finding that blacks and hispanics are not politically cohesive, but nevertheless contends that it is entitled to relief. According to the class, it is entitled to relief because section 2 only requires a "functional majority," as opposed to a numerical majority. Therefore, the "not politically cohesive" finding is not fatal to its lawsuit. Consequently, the class contends, black voters alone in Hardee County are entitled to relief because they (1) constitute a "functional majority" in the proposed single-member district, (2) are politically cohesive and (3) are racially polarized.
 
 
 8
 In response, Hardee County contends that the district court properly denied the class relief on the cohesiveness issue and that the question of whether a "functional majority" satisfies section 2's "majority" requirement is not properly before this court.
 
 ISSUE PRESENTED
 
 9
 The sole issue is whether the class is entitled to relief under section 2 of the Voting Rights Act.
 
 DISCUSSION
 A. Standard of Review
 
 10
 In reviewing the district court's order, we must independently construe the scope of section 2 of the Voting Rights Act and the governing legal standards. See Thornburg v. Gingles, 478 U.S. 30, 79, 106 S.Ct. 2752, 2781, 92 L.Ed.2d 25 (1986). Our review of the district court's findings of fact is controlled by the clearly-erroneous standard. Gingles, 478 U.S. at 78-79, 106 S.Ct. at 2780-81; Fed.R.Civ.P. 52(a). The clearly erroneous standard, however, does not prevent this court "from correcting findings of fact based on misconceptions of the law." Carrollton Branch of the NAACP v. Stallings, 829 F.2d 1547, 1554 (11th Cir.1987), cert. denied, 485 U.S. 936, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988); see also Gingles, 478 U.S. at 79, 106 S.Ct. at 2781.
 
 
 11
 B. Vote Dilution and Section 2 of the Voting Rights Act
 
 
 12
 In this case, to prevail under section 2 of the Voting Rights Act, the class must prove three factors. First, the class must "demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district." Gingles, 478 U.S. at 50, 106 S.Ct. at 2766. Second, it "must be able to show that it is politically cohesive." Gingles, 478 U.S. at 51, 106 S.Ct. at 2766. Two minority groups (in this case blacks and hispanics) may be a single section 2 minority if they can establish that they behave in a politically cohesive manner. See Campos v. City of Baytown, Texas, 840 F.2d 1240, 1244 (5th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3213, 106 L.Ed.2d 564 (1989); League of United Latin American Citizens v. Midland Independent School Dist., 812 F.2d 1494, 1500-02 (5th Cir.), vacated and aff'd on other grounds, 829 F.2d 546 (5th Cir.1987). Third, the class is required to prove that the "white majority votes sufficiently as a bloc to enable it--in the absence of special circumstances, such as the minority candidate running unopposed ...--usually to defeat the minority's preferred candidate." Gingles, 478 U.S. at 51, 106 S.Ct. at 2766-67.
 
 
 13
 Although a district court may consider the "totality of the circumstances" (e.g. "the lingering effects of past discrimination [and] the use of appeals to racial bias in election campaigns") when analyzing a section 2 claim of vote dilution, those factors are "supportive of, but not essential to, a minority voter's claim." Gingles, 478 U.S. at 48 n. 15, 106 S.Ct. at 2765 n. 15 (emphasis in original). Proof of the three Gingles elements is necessary for the type of section 2 vote dilution claim brought here.
 
 C. Analysis
 
 14
 In this case, the district court denied the class relief because it failed to demonstrate that black and hispanic voters in Hardee County are politically cohesive. Our review of the record shows that the class offered little evidence that blacks and hispanics in Hardee County worked together and formed political coalitions. Instead, the class presented anecdotal testimony regarding individual instances where hispanic voters supported and worked for black candidates. More importantly, the class failed to demonstrate that blacks and hispanics in Hardee County have ever voted together. Finally, the class does not contest on appeal the district court's determination that blacks and hispanics in Hardee County are not politically cohesive.
 
 
 15
 Specifically, the class now contends, for the first time on appeal, that the black subclass alone is sufficiently numerous, politically cohesive and racially polarized to satisfy the three-part Gingles test. According to the class, the first element of a section 2 claim (the "majority" requirement) only requires a "functional majority," not a numerical majority. While neither the United States Supreme Court nor the Eleventh Circuit has passed on this legal theory, the class bases this conclusion upon its reading of both Gingles and Congress's intent when amending section 2 of the Voting Rights Act in 1982.
 
 
 16
 Applying this theory to the present case, the class argues that blacks in Hardee County constitute a "functional majority" in the proposed single-member district. This is so, the class asserts, because blacks (who allegedly constitute 36 percent of the electorate in the proposed district) could, given the average white cross-over vote, elect a candidate of their choice. As for the remaining elements of a section 2 claim, the class maintains that the record demonstrates (1) that blacks in Hardee County are politically cohesive and (2) that black and white voting is racially polarized. Although the class acknowledges that this theory of recovery was neither presented to the district court nor addressed in its opinion, the class maintains that this court may grant relief in order to avoid a plain miscarriage of justice. See Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 989-90 (11th Cir.1982).
 
 
 17
 We decline to consider the class's new theory of recovery for a number of reasons. First, the "[f]ailure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal." Denis v. Liberty Mutual Insurance Co., 791 F.2d 846, 848-49 (11th Cir.1986). The class had ample opportunity to raise this theory before the district court and chose not to do so. Fairness to opponents and conservation of judicial resources require that a litigant present all of its theories at the first available opportunity. Second, the class's theory of recovery is based upon a fact (whether blacks can constitute a "functional" majority in the proposed single-member district) not found by the district court. Finally, the class has not alleged a "miscarriage of justice" sufficient to justify ignoring the usual rule preventing a party from raising an issue for the first time on appeal.*
 
 CONCLUSION
 
 18
 We hold that the district court properly concluded that the class failed to prove political cohesiveness as required for a section 2 claim. Further, we conclude that the class's new theory of recovery is not properly before this court. Accordingly, we affirm the district court.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The real problem in this case is that the black population is too small and scattered too widely across the county. Additionally, the "functional majority" theory, even in a case where the record is fully developed, may bring with it undesirable consequences