**Bradley E. MURRAY, Plaintiff,**

v.

**Helen SEVIER, et al., Defendants.**

**Civil Action No. 94–D–1266–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 4, 1997.

---

Bobby Lee Cook, Summerville, GA, Mark R. Hutton, Wichita, KS, Robert Blakey, Notre Dame, IN, Randall E. Fisher, Wichita, KA, for Plaintiff.

Jack H. Watson, Jr., Atlanta, GA, Diane S. Worth, Wichita, KS, Lisa W. Borden, Birmingham, AL, N. Lee Cooper, Birmingham, AL, Patricia T. Mandt, Birmingham, AL, Lee H. Zell, Birmingham, AL, Patricia Clotfelter, Birmingham, AL, Richard Jordan, Montgomery, AL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

This matter is before the court on a motion to dismiss filed on September 5, 1995, by Defendants Helen Sevier ("Sevier"), B.A.S.S., Inc. ("BASS Inc."), Jemison Investment Company, Inc. ("Jemison"), Karl Dabbs ("Dabbs"), and James Davis ("Davis") and a motion to dismiss filed by Defendant Ray W. Scott ("Scott")[1] on September 5, 1995.

---

**1.** Scott's motion is titled "Motion To Dismiss And Alternative Motions To Strike And For More Definite Statement."

Plaintiff Bradley E. Murray ("Murray")[2] filed a consolidated response to these motions on September 21, 1995,[3] a supplemental memorandum in support of his consolidated response on October 16, 1995, and a surreply on October 24, 1995. On October 10, 1995, Scott filed a reply brief and on October 30, 1995, Scott filed a supplemental reply brief. As part of his September 25, 1995 consolidated response to Defendants' motions to dismiss, Murray also included a motion for judgment as a matter of law. Scott responded to Plaintiff's motion on October 10, 1995. Plaintiff also filed a motion to transfer on September 21, 1995, asking the court to transfer this matter back to the United States District Court of Kansas. Defendants Sevier, Jemison, Dabbs, and Davis filed a memorandum in opposition to Plaintiff's transfer motion on October 10, 1995. After careful consideration of the arguments of counsel, relevant case law, and the record, the court finds that Defendants' motions to dismiss and Murray's motion to transfer are due to be denied.

## I. FACTUAL BACKGROUND

This case was spawned by the investigative efforts of "photojournalist" Beau Cabell ("Cabell") and his "attorney-friend" Paul Weeks ("Weeks"). Cabell claims that during the Fall of 1988 he became interested in writing a story about bass fishing for his employer, the *Macon Telegraph*. He claims that he joined Bass Anglers Sportsman Society ("BASS")[4] in the Spring of 1989 as part of his investigative efforts. Not long after joining BASS, Cabell claims that he was struck by Scott's claim that he "owned" BASS. Cabell claims to have consulted Weeks in an effort to resolve these concerns. Based upon Weeks' legal analysis, Cabell decided to continue his investigation in an effort to produce an article or book concerning BASS, Scott, and the disputed claims of ownership.[5]

While Cabell has apparently not yet published a book, the *Macon Telegraph* apparently published his article on March 15, 1992. On February 14, 1992, Plaintiffs Larry Neff and Bradley Murray ("Murray") filed their original complaints in the United States District Court for the District of Kansas. This filing began a twisted tale replete with all the intrigue, plot twists, self-promotion and infighting normally present in a popular novel.[6] The case began with the Kansas court's finding that the Plaintiffs had improperly shopped for a judge and has continued to the sounds of constant bickering and pointed attacks by counsel for both sides. Following its dismissal of the Plaintiffs' first, second, and third amended complaints, the Kansas

---

2. Murray brings this action on behalf of himself and the nearly half-million members of Bass Anglers Sportsmen Society ("BASS") *Murray v. Sevier*, 929 F.Supp. 1461, 1463 (M.D.Ala.1996).

3. As part of his September 21, 1995, response Murray demands judgment as a matter of law on all counts in his Fourth Amended Complaint. Murray provides no support for this motion and the court finds that it is due to be denied. The merits of this action have yet to be explored and remain undetermined.

4. While the court will later expand on the difference between BASS and BASS, Inc., for now the reader should note the different labels applied by the parties.

5. The Kansas court noted with regret that this action "may be a vehicle to gain additional materials for that expose." *Murray v. Sevier*, 156 F.R.D. 235, 258 (D.Kan.1994).

6. For a complete discussion of the history of this action and its important players, see the five previously published opinions in this action: *Murray v. Sevier*, No. 92–1073–K, 1992 WL

75212 (D.Kan. March 13, 1992) (finding sufficient evidence that Plaintiffs engaged in Judge Shopping and therefore denying Plaintiffs' motion to amend and dismissing Plaintiffs' amended complaint); *Murray v. Sevier*, 145 F.R.D. 563 (D.Kan.1993) (finding that Murray's motion for leave to file his Third Amended Complaint was due to be denied since Murray's action was a derivative action and not a direct action and that Murray's First Amended Complaint was due to be dismissed for improper service); *Murray v. Sevier*, 149 F.R.D. 638 (D.Kan.1993) (denying Murray's motion for reconsideration of Kansas court's decision to dismiss second amended complaint and the denial of Murray's motion for leave to file third amended complaint and limiting Murray's right to assert RICO claim in Fourth Amended Complaint); *Murray v. Sevier*, 156 F.R.D. 235 (D.Kan.1994) (granting Murray's motion to file Fourth Amended Complaint, requiring Murray to plead a Federal Rule of Civil Procedure 23.2 class action, striking certain scandalous material from the Fourth Amended Complaint, and transferring the matter to the Middle District of Alabama); *Murray v. Sevier*, 929 F.Supp. 1461 (M.D.Ala.1996) (denying Murray's motion for recusal).

court, over Murray's strenuous objections,[7] transferred this matter to the United States District Court for the Middle District of Alabama by virtue of an order entered June 8, 1994.

While the parties' filings have often muddied the waters, the substance of Murray's claims are relatively straightforward. Murray on behalf of himself and the approximately half-million members of BASS, an unincorporated association, seeks to recover funds which he alleges have been either converted or stolen by the Defendants from BASS members. In his Fourth Amended Complaint Murray alleges that Scott originally founded BASS in 1967 as an unincorporated association and then in 1969 under the laws of Alabama incorporated a separate entity known as BASS, Inc.[8] Murray alleges that these similarly named entities allowed Scott to play a "shell game" on BASS members. Murray contends that Scott convinced prospective members that they were joining a society devoted to promoting bass fishing, conservation, and youth fishing when they were actually joining BASS, Inc. and Scott was using the corporate form to siphon off members' dues for his personal benefit. Murray contends that Scott continued to play this shell game until 1986 when he "sold" BASS and BASS, Inc. to a group of former employees and investors.[9] He contends that Helen Sevier ("Sevier"), a long-time employee and business associate of Scott, took over direction of BASS and BASS, Inc., following the sale. According to Murray, Dabbs serves as a director, vice-president, treasurer and secretary of BASS, Inc. Murray appears to allege that Jemison and Davis play a more passive role and are primarily investors in Sevier's 1986 purchase of BASS and BASS, Inc. Murray contends that Sevier, Dabbs, Davis, and Jemison are the only shareholders in BASS, Inc.

Murray argues that Scott and his successors have committed several torts against BASS members. In his Fourth Amended Complaint, Murray claims that the Defendants breached their fiduciary duties to BASS members by allowing members' dues and other revenues to be diverted from the members into the pockets of the Defendants. Murray also claims that the Defendants committed fraud against BASS members by making numerous misrepresentations in an effort to further their alleged scheme and avoid member detection of this scheme. Finally, Murray contends that the Defendants fraudulently concealed from BASS members material facts in an effort to further their scheme and avoid possible detection.[10]

In their motions to dismiss Defendants argue that all of Murray's claims are barred by the statute of limitations and/or the rule of repose. Further, the Defendants argue that the equitable relief requested by Murray is barred by the equitable doctrine of laches. Defendants reiterate their argument that Federal Rule of Civil Procedure 41 requires that Murray's Fourth Amended Complaint

7. Murray's counsel argued that "transfer to Alabama is inappropriate because it is a 'political nirvana to these defendants'" and "Ray Scott is worshipped by the 'brainwashed' citizenry of Montgomery and is so powerful and influential that 'try[ing] this case before a Montgomery, Alabama, jury would be like trying to persuade a New York City jury that George Steinbrenner didn't own the Yankees." *Murray v. Sevier*, 929 F.Supp. 1461, 1464 n. 2 (M.D.Ala.1996). The Kansas court characterized these ideas as "scandalous remarks" and "outrageous and offensive." *Murray v. Sevier*, 156 F.R.D. 235, 257 n. 18 (D.Kan.1994). As this court stated in its order of March 20, 1996, it believes that many of these concerns have been resolved since the transfer of this action to the Middle District. *Murray v. Sevier*, 929 F.Supp. at 1464 n. 2.

8. In 1969 Scott incorporated an entity known as Bass Anglers Sporting Society of America, Inc.

In 1980 the name of the corporation was changed to Bass Anglers Sportsman Society, Inc. The court refers to the incorporated entity as BASS, Inc., throughout this opinion and order for the sake of clarity.

9. According to Murray, Scott currently serves as President of BASS despite the 1986 sale.

10. While Murray argues that the Defendants have improperly converted BASS members' funds, his Fourth Amended Complaint does not enumerate a claim for conversion. The court believes that such an omission was intentional judging by the all encompassing nature of the latest complaint, its 80 page length and its extensive discussion of small details of the alleged fraudulent scheme. Therefore, the court finds that the complaint does not contain a claim for conversion.

be dismissed. They also contend that they have not been properly served in this action.

In support of their motions to dismiss, Defendants argue that Murray's claims of breach of fiduciary duty, fraud, and fraudulent concealment are each governed by a two-year statute of limitation under § 6–2–38 of the Alabama Code. They claim that Murray and other BASS members discovered or should have discovered the alleged wrongdoing more than two years prior to the filing of this action. The Defendants contend that the seminal events in this story including the incorporation of Bass Anglers Sporting Society of America, Inc. in 1969, changing the name of Bass Anglers Sporting Society of America, Inc. to BASS, Inc. in 1980, and Scott's sale of BASS to Sevier, Dabbs, Jemison, and Davis in 1986 were all public events which either did or should have put all BASS members on notice of the alleged wrongdoing. Therefore, according to the Defendants, the two-year statute of limitations began to run either twenty-three years, twelve years, or at least six years prior to the filing of Murray's complaint in 1992. Pursuant to this line of reasoning, the two-year statute of limitations had run well prior to Murray's 1992 complaint.

Scott also argues that Murray's claims are absolutely barred under Alabama's common law doctrine of repose.[11] Scott claims that this rule operates to bar all claims that are based on conduct more than twenty years old. If the court finds that the Defendants' motion to dismiss is due to be denied, Scott requests the court to order Murray to replead his complaint because the complaint is excessively complex, contains irrelevant material, and presents extensive evidence. Dabbs, Jemison, and Davis also allege that Murray has failed to properly serve them as required by the Federal Rules of Civil Procedure and that Murray failed to plead his action under Federal Rule of Civil Procedure 23.2.[12]

In response to the Defendants' two-dismissal argument under Rule 41,[13] Murray contends that this argument has been rejected on two earlier occasions by the Kansas court and is now a moot issue. Murray concedes that he mistakenly omitted mention of Rule 23.2 from his Fourth Amended Complaint but argues that his complaint does properly set forth allegations required by the Kansas court pursuant to its interpretation of Rule 23.2. He contends that all Defendants to this action have been properly served and that he has submitted "absolute proof that all defendants in this case have been served process."

As to the statute of limitations and rule of repose issues, Murray argues that the applicable statute of limitations has not yet begun to run due to the Defendants' alleged fraudulent concealment of essential information. Murray also argues that the statutory periods have been tolled due to Defendants' alleged fiduciary role in relation to BASS members. Finally, Murray argues that his claims for equitable relief are not controlled by any statute of limitations.

## II. DISCUSSION

The Defendants' motions to dismiss urge dismissal on a variety of grounds. However, the court will divide its discussion into two sections: (1) issues previously raised in the Kansas portion of this litigation and (2) issues newly raised. Defendants raised their two-dismissal argument during the Kansas portion of this litigation and now raises it again. Likewise, Murray, who strenuously objected to Defendants' motions to transfer

11. In Murray's surreply of October 24, 1995, he contends that Kansas law governs the statute of limitations issue. Murray had not previously made this argument in his numerous pleadings on this issue and abandons it in his latest discussion of the statute of limitations issue in his motion for partial summary judgment filed on March 13, 1997. Therefore, the court will consider the statute of limitation issue under Alabama law and will not discuss Kansas law as it applies to this issue.

12. Rule 23.2 provides for the maintenance of class actions "brought by or against the members of an unincorporated association ."

13. Federal Rule of Civil Procedure 41(a)(1) states that "a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States." Defendants contend that Murray and former Plaintiff Neff's filing and dismissing of several actions during their judge-shopping effort invoke the two-dismissal provision of Rule 41.

venue to the Middle District of Alabama throughout the Kansas portion of the litigation, revisits this issue. While some of the other issues raised by the parties may have been touched on by the Kansas portion of this litigation, the court will treat only the Rule 41 argument and motion to transfer venue as having been previously raised during the Kansas litigation and decided by the Kansas court.

## A. Issues Previously Determined by the Kansas Court

■ The court takes a dim view of the parties' urging that it overturn the Kansas court's decisions, which were obviously made after considerable thought and deliberation. The record and particularly the Kansas court's published opinions reflect the extensive thought and effort that the Kansas court put into each decision. Furthermore, the Kansas court was the court closest to this action at the point it made these decisions. For this court to reexamine the Kansas court's prior decisions would likely amount to little more than a second-guessing of the Kansas court's well-reasoned decisions. This viewpoint is largely adopted by transferee courts which have been faced with similar requests to overturn a transferor court's decision.

For instance, the Third Circuit in *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 170 (1982), held that a transferor court's decision concerning venue and personal jurisdiction is "the law of the case and should not be reconsidered except in unusual circumstances." The court's list of unusual circumstances included situations in which the deciding judge was unavailable to rule on a motion to reconsider, where new evidence is available to the second judge, or where the second judge has an obligation "to apply a supervening rule of law." *Id.* at 169–70; *see also Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509 (10th Cir.1991) (listing three similar exceptions).

The Eleventh Circuit has not directly addressed this issue but it has expressed support for the idea that transferor court decisions should not be reviewed by the transferee court. In a 1982 decision the Eleventh Circuit noted that "when a case is transferred between circuits, 'it is well established that a transferee court cannot directly review the transfer order itself.'" *Roofing and Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 983 (11th Cir.1982) (quoting *Starnes v. McGuire,* 512 F.2d 918, 924 (D.C.Cir.1974) (en banc)). In *Shute v. Carnival Cruise Lines, Inc.,* 804 F.Supp. 1525, 1528 (S.D.Fla.1992) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)), the court noted that a reexamination of a transferring court's decision would "'threaten to send litigants into a vicious circle of litigation.'".

Accordingly, this court will not disturb the Kansas court's earlier decisions concerning Defendants' Rule 41 dismissal argument and Murray's motion to transfer. Therefore, the court finds that the portion of Defendants' motions to dismiss based upon Rule 41 of the Federal Rules of Civil Procedure is due to be denied as is the Plaintiff's motion to transfer venue from the Middle District of Alabama back to the United States District Court for the District of Kansas.

## B. Newly Raised Issues

Within its grouping of newly-raised issues, the court includes Defendants' arguments concerning the running of the statutory period against Murray's claims as well as Scott's argument concerning the rule of repose. The court will also consider Defendants' argument that Murray's Fourth Amended Complaint fails to properly plead his class action under Rule 23.2 and that the complaint suffers from additional defects. Finally, the court considers Defendants' argument that they have not been properly served.[14]

### *Rule of Repose*

■ Since 1858 the Alabama courts have followed a rule of repose which "operates as an absolute bar to claims that are unasserted for 20 years." *Boshell v. Keith,*

---

14. While the Kansas court partially based its dismissal of Murray and Neff's original complaint upon the Plaintiffs' failure to serve Sevier, this court does not find this earlier ruling controlling at this stage in the litigation of this matter.

418 So.2d 89, 91 (Ala.1982). While the principle underlying this rule is similar to a statute of limitations, the rule is "broader in scope." *Id.* "Unlike laches, however, the only element of the rule of repose is time." *Id.* at 91. The principle underlying this rule was explained by the court in *Snodgrass v. Snodgrass,* 176 Ala. 276, 58 So. 201, 201–02 (1912) which stated that: "[a]s a matter of public policy, and for the repose of society, it has long been the settled policy of this state, as of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will not be inquired into."

■ While at first glance it appears that the rule of repose operates in a strictly mechanical fashion, there are certain qualifications imposed upon the rule's operation. First, the rule of repose is " 'a defensive matter,' " *Oehmig v. Johnson,* 638 So.2d 846, 850 (Ala.1994), and the rule is "not a sword but a shield," *Survey of 1993–94 Developments in Alabama Case Law,* 46 Ala.L.Rev. 245, 332 (1994) (reviewing Alabama Supreme Court's decision in *Oehmig*). Second, "[t]he rule of repose cannot run until there is at least constructive notice of a potential claim." *Oehmig,* 638 So.2d at 851; *see also Veitch v. Woodward Iron Co.,* 200 Ala. 358, 76 So. 124, 129 (1917) (characterizing the rule of repose as primarily a question of acquiescence and stating that "[a]cquiescence involves knowledge of the facts which entitle to relief, and manifests a want of diligence").

■ Additionally, the rule of repose does not force prospective plaintiffs to continually check possible sources of claims in order to avoid operation of the rule's bar. For instance, in *Oehmig* the plaintiffs claimed that through the rule of repose they had acquired the mineral rights to a disputed portion of property. 638 So.2d at 847. The facts showed that the first deed, which allegedly granted those in plaintiffs' chain of title color of title over the land's mineral rights, was filed twenty-six years after the original grant of surface rights. *Id.* at 847, 850–51. However, the *Oehmig* court stated that the

purported owners of the mineral rights in question did not have a responsibility "to continually check the title records to see if someone had purported to convey their mineral interests." 638 So.2d at 851. To impose such a duty would have required the *Oehmig* defendants to check the appropriate title records routinely for nearly thirty years in an effort to avoid the operation of the rule of repose.

■ Just as the *Oehmig* court refused to impose a duty upon its defendants, this court also refuses to force Murray and other BASS members to continually check the probate records of Montgomery County, Alabama, in hopes of catching the incorporation of an unincorporated association. To find otherwise would place far too weighty of a burden on the members of such associations. According to Murray, the formation of BASS of America, Inc., in 1969 was not widely publicized to all members. While Defendants suggest that some changes were made in the masthead of the *Bassmaster* Magazine following the incorporation, the court finds that these changes were not enough to put BASS members on actual or constructive notice of their alleged claims. Finally, the court is concerned about applying the rule of repose to BASS members who have only recently joined the organization. Applying the rule's absolute bar to recently enrolled BASS members raises serious due process concerns.[15] *See generally* Susan C. Randall, Comment, *Due Process Challenges to Statutes of Repose,* 40 Sw.L.J. 997 (1986) (discussing constitutional concerns over the implementation of statutes of repose). Therefore, the court finds that Scott's motion to dismiss on grounds of the rule of repose is due to be denied.

### *Statute of Limitation*

Defendants also insist that Murray's claims are barred by Alabama's statutory scheme of limitation periods. They argue that under Alabama's fraudulent concealment statute a plaintiff "is deemed to have discovered the facts constituting the fraud at the

---

15. For instance, a BASS member who joined in 1987 would have been a member of the organization for five years before the filing of this action.

However, that same member would be barred from bringing an action because of the twenty year lapse from 1969 to 1989.

time when he would have discovered the fraud upon exercise of due diligence." Scott's Reply Br. of 10/10/95 at 4 (citing *Tanner v. Church's Fried Chicken, Inc.,* 582 So.2d 449, 453 (Ala.1991)). Defendants cite a series of decisions which define the boundaries of "due diligence" as it relates to a plaintiff's obligation to read written documents bearing on the alleged fraud. *See Kelly v. Connecticut Mutual Life Ins. Co.,* 628 So.2d 454 (Ala.1993); *Fabre v. State Farm Mutual Automobile Ins. Co.,* 624 So.2d 167 (Ala.1993); *Gray v. Liberty Life Ins. Co.,* 623 So.2d 1156 (Ala.1993). They also cite a series of decisions holding that plaintiffs must act upon publicly disclosed comments and/or judgments or face the bar of the statute of limitations. See, e.g., *United Klans of America v. McGovern,* 621 F.2d 152 (5th Cir.1980)[16]; *Haines v. Tonning,* 579 So.2d 1308 (Ala.1991); *Jones Valley Finance Co. v. Tennille,* 40 Ala.App. 284, 115 So.2d 495 (1959).

Alabama courts have struggled with issues of notice, alternatively finding that receipt of written documents constitutes notice and in other actions finding that actual notice is required. *See Walker v. Transouth Financial Corp.,* CV–95–A–672–N, 1996 WL 406836, at *16–22 (M.D.Ala. July 10, 1996) (examining the moment the statutory period begins to run in fraud actions involving written documents in light of the shift in Alabama case law following the Alabama Supreme Court's decision in *Hicks v. Globe Life and Accident Ins. Co.,* 584 So.2d 458 (1991)). After exhaustively examining Alabama case law on this topic, the *Walker* court was unable to resolve the statute of limitations question before it. Instead, the *Walker* court certified a question to the Alabama Supreme Court in an effort to resolve the confusion in this area.

 However, much of this confusion has been resolved by the Alabama Supreme Court's decision in *Foremost Ins. Co. v. Parham,* 693 So.2d 409 (1997). In this decision the Alabama Supreme Court abandoned the "justifiable reliance" standard adopted in Hicks and returned to the "reasonable reliance" standard as laid out in *Torres v. State Farm Fire & Cas. Co.,* 438 So.2d 757 (Ala. 1983). Id. at 421. By adopting the reasonable reliance standard, Alabama courts will "provide a mechanism ... whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Id.* When determining the tolling of the statute of limitations in fraud actions, a trial court should now consider "all of the circumstances surrounding the transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." *Id.*

Even though the *Foremost* opinion removes doubt in situations involving plaintiffs who were in possession of documents saying one thing while meanwhile being told the exact opposite, its application to the current matter is less clear. The Defendants do not allege that Murray and other BASS members were provided with written documents clearly stating that they were joining an association affiliated with a corporation. Instead, the Defendants allege that the *Bassmaster*'s masthead was changed slightly to reflect an "Inc." after the corporation was formed. Also, it is unclear how the *Foremost* reasonable reliance factors apply in the case of association officers allegedly withholding material information from association members. It is also unclear how the *Foremost* decision affects earlier Alabama decisions which involve the receipt of documents that do not clearly indicate the alleged fraud. Therefore, even after *Foremost,* the decisions dealing with the commencement of the statutory period are a mixed collection with some suggesting that plaintiffs are charged with constructive knowledge of any received written document or public filing and others suggesting that plaintiffs are not automatically charged with constructive knowledge of all public filings and documents in receipt.

---

**16.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

However, the case law dealing with fiduciaries and the running of the statute of limitations is less murky. It is long-established law in Alabama that "a cause of action against a corporation's board of directors for breach of fiduciary duty does not accrue as long as they remain in control of the corporation." *Federal Deposit Ins. Corp. v. Buttram,* 590 F.Supp. 251, 254 (N.D.Ala.1984) (citing *Greenleaf v. Profile Cotton Mills,* 235 Ala. 530, 180 So. 582 (1938); *Glass v. Stamps,* 213 Ala. 95, 104 So. 237 (1925); *Montgomery Light Co. v. Lahey,* 121 Ala. 131, 25 So. 1006 (1899)). Likewise, Alabama courts do not allow those acting as fiduciaries to "escape liability under the shelter of the statute of limitations." *Coxe v. Huntsville Gas Light Co.,* 106 Ala. 373, 17 So. 626, 627 (1895); *see also Jacksonville Pub. Serv. Corp.,* 236 Ala. 4, 180 So. 583, 586 (1938) (companion decision of *Greenleaf* involving Greenleaf's improper actions resulting in the wrongful issue of a note by Profile Mills to Jacksonville Public Service Corporation promising to pay Jacksonville Public Service Corporation the sum of $43,000.00).

These doctrines are based upon the expectation that a corporate director will provide "good faith and fair dealings" and "when elected will exercise the functions of the office honestly for the benefit of all stockholders, free from pernicious and fraudulent domination of those holding the majority." *Jacksonville,* 180 So. at 587. For instance, in *Coxe,* the defendant president of the plaintiff corporation "occupied a fiduciary relation, partaking sufficiently of the nature of a trustee, to require him to deal fairly and openly with the corporation and directors in all his fiduciary duties." 17 So. at 627. The *Coxe* defendant president was not only a director of the subject corporation, but he also "governed and controlled its management, and received and disbursed all its moneys, kept its books, and withheld them from the directors." *Id.* Based upon the defendant president's relationship with the plaintiff corporation and the directors, the court held that the defendant could not "escape liability under the shelter of the statute of limitations." *Id.*

However, Scott argues that the Alabama Supreme Court's decision in *Jefferson County Truck Growers Ass'n v. Tanner,* 341 So.2d 485 (1977), shows that fiduciary status does not affect the running of the statute of limitations. In *Tanner,* the Jefferson County Truck Growers Association sued a corporate officer-director alleging that the officer-director had breached his fiduciary duty by receiving a personal benefit from his officer-director position. *Id.* at 486–87. On three separate occasions the association entered into leasing agreements with third-parties which eventually resulted in payments to the officer-director. *Id.* at 487–489. The trial court found that the statute of limitations barred the association's claims against the officer-director as to one of the alleged breaches of fiduciary duty despite the association's arguments that the officer-director's fiduciary status tolled the statute of limitations. *Id.* at 488.

The *Tanner* court noted that the officer-director occupied a "quasi trustee" position in relation to the incorporated association and that as long as a fiduciary relationship exists between the officer-director and the corporation "the statute of limitations will not run against a claim based on (a corporate director's) wrongdoing." *Id.* at 487–88. The *Tanner* court also noted that this tolling principle has been applied in "cases based on self-dealing where the director himself was responsible for the concealment of facts upon which a claim could be based and where knowledge of those facts were solely within the director's control." *Id.* at 488 (citing *Greenleaf v. Profile Cotton Mills,* 235 Ala. 530, 180 So. 582; *Coxe,* 106 Ala. 373, 17 So. 626). Nevertheless, after acknowledging these principles, the *Tanner* court applied the standard notice analysis, finding that the association had notice of the alleged breach of fiduciary duty and ultimately finding that the association's action was barred by the statute of limitations.

While the *Tanner* court's decision seems to suggest that a defendant's fiduciary status does not affect the standard notice analysis, the *Tanner* decision was based upon substantially different facts from those in the *Greenleaf, Jacksonville* or *Coxe* decisions. The allegedly improper transaction which was the subject of the claim barred by the statute of limitations began when the association acting

through the defendant officer-director executed a lease with a third-party. *Id.* at 487. That third-party made improvements to the leased parcel and later subleased the parcel to a grocery store. *Id.* Approximately one year after the approval of the initial lease, the third-party transferred one-half interest of the grocery store sublease to the officer-director in exchange for the officer-director's previous investment in other projects with the third-party. *Id.* The members of the association's board "w[ere] aware of [the officer-director's] interest in this transaction from the time he acquired it and never made objection." *Id.* Additionally, there was evidence to suggest that the officer-director did not use his position to affect the terms and conditions of the lease with the third-party. *Id.* Therefore, the *Tanner* officer-director defendant not only completely disclosed his interest in the allegedly improper transaction but he also excused himself from future dealings with the allegedly improper transaction.

As previously mentioned, the court treats BASS as an unincorporated association for purposes of this decision. Scott has allegedly held himself out as President of BASS from its inception to the current time. Likewise, the other Defendants have occupied positions of power during their control of BASS. While the Defendants do not serve as corporate directors, they do hold positions similar in terms of control and responsibility. The court finds that the Defendants' responsibilities are analogous to the responsibility of corporate directors and officers. Accordingly, the court finds that Alabama case law dealing with corporate fiduciaries also applies to the Defendants in this action.[17]

The court also finds that the fiduciary status which the Defendants allegedly occupied in relation to Murray and other BASS members prevents the Defendants from using the statute of limitations as a defense against the claims in this action. Just as the *Coxe* and *Greenleaf* defendants dominated their respective corporations, the Defendants also allegedly controlled BASS's everyday

affairs and controlled access to all organizational information. Based upon their positions of power and access, the Defendants cannot now assert the statute of limitations as a shield to Murray's claims. Furthermore, unlike the officer-director defendant in *Tanner*, these Defendants allegedly did not publicly disclose the facts making up Murray's claims and also did not excuse themselves from future involvement in decision-making concerning the alleged "shell-game." Therefore, the court finds that the portions of Defendants' motions to dismiss based upon the statute of limitations are due to be denied.

### Laches

While equitable remedies are not directly controlled by statutes of limitations, these remedies are unavailable where the statute of limitations has already run on the underlying legal claim. *See Howle v. Alabama State Milk Control Bd.*, 265 Ala. 189, 90 So.2d 752, 755 (1956); *Kelley v. Woodley*, 228 Ala. 401, 153 So. 745, 745–46 (1934). Based upon its earlier finding that Murray's legal claims were not barred by the applicable statute of limitations, the court finds that Murray's requests for equitable relief are not barred by the running of the statutory periods.

However, Defendants argue that Murray's claims may be barred by the doctrine of laches. *See CSX Transp., Inc. v. City of Thorsby, Ala.*, 741 F.Supp. 889, 892 (M.D.Ala.1990). "Laches is an equitable doctrine committed to the sound discretion of the trial court." *Id.* As part of their determination, courts must "examine both the amount of delay and the prejudice caused by that delay." *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1547 (11th Cir. 1984). In *Thorsby*, the court required the defendant to demonstrate: " '(1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom

---

**17.** A search of Alabama case law has failed to reveal decisions defining the responsibilities for those who control unincorporated associations. However, the court finds that these responsibilities are at least as great as the responsibilities placed upon those who control an incorporated association. That finding is especially true where the unincorporated association allegedly has little member involvement in organizational decisionmaking and those who control the organization have largely unbridled discretion over the organization's affairs.

the claim is asserted.'" 741 F.Supp. at 892 (quoting *Environmental Defense Fund v. Alexander*, 614 F.2d 474, 478 (5th Cir.1980)). Just as the statute of limitations may not be used by a corporate director to protect against certain charges of wrongdoing, the doctrine of laches will also not protect alleged corporate wrongdoers. *See Jacksonville*, 180 So. at 586.

■ Based upon the case law and the allegations in this matter, the court finds that Murray's claims for equitable relief are not barred by the doctrine of laches. While there has been a substantial delay between the inception of the alleged "shell game" and the bringing of Murray's claims, the court finds that the delay was excusable and that the Defendants have not been unduly prejudiced by the delay. Additionally, Murray alleges that the Defendants used their positions to conceal the purported wrongdoing. Therefore, the court finds that it cannot allow the Defendants to now hide behind the doctrine of laches as a bar to Murray's claims. Accordingly, the court finds that the portions of the Defendants' motions to dismiss requesting the court to dismiss Murray's claims for equitable relief are due to be denied.

### Lack of Service

Defendants insist that they have not been properly served with sufficient process in this matter. In response Murray contends that he properly served each Defendant with his Fourth Amended Complaint in accordance with Federal Rule of Civil Procedure 5. He also argues that the Defendants do not deny that they have received service and notice of the claims against them. The Defendants have not replied to this portion of Murray's response. Based upon the high burden at the motion to dismiss stage and the conflicting claims on this point, the court finds that this portion of the Defendants' motions to dismiss is due to be denied.

### Pleading Defects

The Defendants contend that Murray failed to properly allege his purported class action under Federal Rule of Civil Procedure 23.2 as required by the Kansas court. In the decision transferring this matter to the Middle District of Alabama, the Kansas court found that Murray's class allegations "fall squarely within Rule 23.2, and, in order for [Murray] to proceed, his fourth amended complaint must be changed to reflect that it is stating a Rule 23.2 class action." *Murray v. Sevier*, 156 F.R.D. 235, 241 (D.Kan.1994). In his September 21, 1995 response, Murray concedes that the Fourth Amended Complaint does not base its class allegations on Rule 23.2. However, Murray has not yet amended his complaint to reflect the Kansas court's finding.

■ Scott also requests the court to order Murray to replead the entire Fourth Amended Complaint. Scott bases his request upon several different grounds including assertions that the complaint contains "overly detailed evidentiary matters" and "repetitive and summary allegations." He bases his arguments on Federal Rules of Civil Procedure 8 and 12 which he claims require Murray to recast his overly long and vague complaint.

■ The Kansas court examined Murray's Fourth Amended Complaint as part of its June 8, 1994, order transferring the action to the Middle District of Alabama. The Kansas court concluded that certain material should be stricken from the complaint but did not express any concern over the length or format of the complaint. The court will not disturb the Kansas court's finding on the format of Murray's Fourth Amended Complaint and therefore finds that this portion of Scott's motion is due to be dismissed. However, the court finds that Murray must replead his complaint to properly allege his class allegations under Rule 23.2. The Kansas court clearly found that the only permissible basis for Plaintiff's class action is Rule 23.2. Currently Rule 23.2 is not mentioned at any point during Murray's eighty-page complaint. Therefore, the court finds that Murray must file an amended complaint within fourteen days of the entry of this order or this action will be dismissed.

### Ground Rules for Future Proceedings

Murray claims that the members of BASS have lost somewhere in excess of $75 million as a result of Defendants' alleged "shell game." Additionally, Murray makes allega-

tions of intentional wrongdoing against each prominent member of BASS's leadership. Predictably, such claims cause great concern to any business entity. Even if such a claim is totally unfounded, it may cast a pallor over an organization actively seeking new projects and accompanying financing and may distract management from day-to-day operations. In high stakes litigation strong feelings on each side of the action naturally result. In this action these feelings have often been transformed from personal resentments to legal positions and arguments. The Kansas court noted "the unnecessary sarcasm, vitriol and hyperbole which have permeated the pleadings and memoranda filed on plaintiff's behalf" and also commented that "defendants' Georgia counsels' skirts are not much cleaner than plaintiffs' counsel with respect to inappropriate statements in the pleadings and conduct during discovery." *Murray v. Sevier,* 156 F.R.D. 235, 257 n. 18 (D.Kan.1994).

With the entry of this Memorandum Opinion and Order, the court has cleared the deck of pending motions [18] and is prepared to move to the merits of this action. The court instructs the parties to refocus their efforts upon the legal questions presented by the merits of this action, direct their energies into research and writing, and discontinue the personal attacks and ugliness that has characterized this action at certain points. As noted in its Order entered on April 14, 1997, this court is not prepared to tolerate "sharp practices, Rambo litigation, playing hardball, or whatever the latest label for unprofessional behavior may be." Therefore, if the parties are unable to control their behavior, the court will use whatever means are necessary to prevent the further degeneration of this action.

### III. CONCLUSION

The parties to this action have brought before the court a number of motions. The court has addressed each of these motions and rendered decisions in each. The court has also given Murray fourteen days in which to amend his complaint to avoid dismissal.

Accordingly, it is CONSIDERED and ORDERED that:

(1) Scott's motion to dismiss be and the same is hereby DENIED;

(2) the motion to dismiss filed by Sevier, BASS Inc., Jemison, Dabbs, and Davis be and the same is hereby DENIED;

(3) Murray's motion to transfer be and the same is hereby DENIED;

(4) Murray's motion for judgment as a matter of law be and the same is hereby DENIED;

(5) Murray and former Plaintiff Larry Neff's motion for class certification filed on August 25, 1992, be and the same is hereby DENIED without prejudice.

(6) Murray shall have fourteen days from the entry of this order in which to AMEND his complaint to properly state his class action pursuant to Rule 23.2 or his complaint shall be dismissed.

---

**18.** Murray's motion for partial summary judgment filed on March 13, 1997, is the only pending motion in this matter following the entry of this order.