**Bradley E. MURRAY, Plaintiff,**

v.

**Ray W. SCOTT, et al., Defendants.**

**No. Civ.A. 94–T–1266–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 4, 2001.

Bobby Lee Cook, Cook & Palmour, Summerville, GA, Mark B. Hutton, Derek S. Casey, Hutton & Hutton, Wichita, KS, Robert Blakey, Notre Dame, IN, Paul B. Weeks, III, Wichita, KS, Randall E. Fisher, Newton, KS, for Bradley Murray.

J. Allen Maines, Eric C. Lang, G. Mark Cole, Paul, Hastings, Janofsky & Walker, Atlanta, GA, Jack H. Watson, Jr., Long, Aldridge & Norman, Atlanta, GA, Diane S. Worth, Dennis M. Feeney, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, for Ray W. Scott, Jr.

N. Lee Cooper, Jayna Partain Lamar, Carl Stanley Burkhalter, Maynard, Cooper & Gale, P.C., Birmingham, AL, John H. Morrow, Michael R. Pennington, Matthew H. Lembke, Bradley, Arant, Rose & White, LLP, Birmingham, AL, Lee H. Zell, Balch & Bingham, Birmingham, AL, Patricia Clotfelter, Lisa Wright Borden, Berkowitz Lefkovits Isom & Kushner, Birmingham, AL, Richard M. Jordan, Benjamin Lee Locklar, Randy A. Myers, Jordan, Myers & Locklar, P.C., Montgomery, AL,

Joseph B. Haynes, Michael R. Smith, Letitia A. McDonald, King & Spalding, Atlanta, GA, William Robert Martin, Richard K. Thompson, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for B.A.S.S., Inc., Helen Sevier, Jemison Investment Co., Inc., Karl L. Dabbs and James D. Davis.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Bradley E. Murray originally brought this lawsuit in the United States District Court for the District of Kansas naming two corporations (B.A.S.S., Inc., and Jemison Investment Co.) and several persons (Ray W. Scott, Helen Sevier, Karl Dabbs, and James Davis) as defendants. At the behest of defendants, the Kansas district court transferred this case to the United States District Court for the Middle District of Alabama under 28 U.S.C.A. § 1404(a), which provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This case is now before the court on Murray's renewed motion to re-transfer the case back to Kansas. For the reasons stated below, the motion will be denied.

## I. BACKGROUND

Murray is a member of the Bass Anglers Sportsman's Society of America, also know as BASS. He alleges that, contrary to the publicly stated goals of the organization, which include commendable conservation and environmental purposes, defendants have used BASS for their own profit, wrongfully taking association property from the uses to which the members believed it would be applied, principally by incorporating BASS without a vote of the membership of the association. In so do-ing, according to Murray, defendants converted the association's property and breached their fiduciary duties to the members. On behalf of the association's members, Murray seeks return of all wrongfully-appropriated property and for the imposition of a constructive trust on the remaining property of BASS, to be used for the nonprofit purposes expressed publicly.

As stated, this lawsuit was initially brought in 1992 in the Kansas federal district court. On motion by defendants, this case was transferred to the Middle District of Alabama. *Murray v. Sevier,* 156 F.R.D. 235, 251–55 (D.Kan.1994). After transfer, Murray filed a motion to re-transfer the case back to Kansas, and that motion was denied. *Murray v. Sevier,* 993 F.Supp. 1394 (M.D.Ala.1997). The case has since proceeded through final disposition, *Murray v. Sevier,* 50 F.Supp.2d 1257 (M.D.Ala. 1999), and appeal, and returns to the Middle District following an Eleventh Circuit Court of Appeals decision vacating the Alabama district court orders and judgment and for reassignment, because, according to the appellate court, the district judge should have recused himself. *Murray v. Scott,* 253 F.3d 1308 (11th Cir.2001). The Eleventh Circuit decision effectively restarted this case on a clean slate, and, after reassignment of the case to the undersigned district judge, the court now considers the nearly-decade-old re-transfer dispute.

## II. DISCUSSION

### A. SECTION 1404 ARGUMENT

■ Preliminarily, this court's review of the propriety of the Kansas district court's transfer order is limited: "Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Christianson v. Colt Indus. Operating Corp.,*

486 U.S. 800, 819, 108 S.Ct. 2166, 2179, 100 L.Ed.2d 811 (1988).

Murray's challenge to the transfer revolves around the language of 28 U.S.C.A. § 1404(a), which allows transfer of a case "in the interest of justice" to "districts where it might have been brought." Murray contends that this action could not be brought in Alabama and thus that the decision of the United States District Court for Kansas was not "plausible" under *Christianson.*

### 1. RULE 17(B)

Murray believes that this case could not have been brought in Alabama because of lack of diversity jurisdiction. Murray's logic is essentially as follows: This case, as framed by Murray, is an action to recover the wrongfully converted property of an unincorporated association. Fed.R.Civ.P. 17(b) states that the capacity of a party to file a lawsuit on behalf of an association depends on the substantive law of the forum state.[1] If the lawsuit had been originally brought in Alabama, Rule 17(b) would require that Alabama law govern his capacity to bring suit. *McNulty v. Higginbotham,* 252 Ala. 218, 40 So.2d 414, 416 (1949), requires that the association be made a party to any action to recover association property. Once the association is made a party, the citizenship of all members of the association must be considered in the diversity calculus, *United Steelworkers of Am. v. R.H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). Because BASS has many members across the United States, and because some of those members necessarily are citizens of the same State as some of defendants, complete diversity of citizenship would be lacking.

■ The court cannot accept Murray's argument. The law is now settled that state laws regarding capacity to sue are *not* considered in determining where an action "might have been brought" under § 1404(a). *Van Dusen v. Barrack,* 376 U.S. 612, 624, 84 S.Ct. 805, 813, 11 L.Ed.2d 945 (1964). By extension, the requirements of Fed.R.Civ.P. 17(b), to consult these state laws, are inapplicable. The language of § 1404(a) was not "intended to restrict the availability of convenient federal forums by referring to state-law rules, such as those concerning capacity to sue, which would have applied if the action had originally been instituted in the transferee federal court." *Id.* at 621, 84 S.Ct. at 812. Therefore, state rules that, for example, create registration requirements or other preconditions for a plaintiff to bring suit in the forum are not consulted under the § 1404(a) framework. Rather, the language of § 1404(a) serves to focus inquiry on whether the federal venue rules and the requirements of personal jurisdiction allowed the case to proceed in the transferee district. *Id.* at 621–22, 84 S.Ct. at 812.

The *McNulty* case operates fundamentally as a capacity-to-sue rule; it creates the precondition of joinder of the association to the ability of the members of an

---

1. Rule 17(b) provides:

   "The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., Sections 754 and 959(a)."

association to sue for association property. While its effect might be to destroy complete diversity as alleged in this lawsuit, this effect does not eliminate the rule's basic character. It is a capacity-to-sue rule, not a restriction on the subject-matter jurisdiction of the federal courts.

However, the court appreciates that Murray asserts that this case could not be brought in Alabama, not because of Rule 17(b) directly, but because diversity jurisdiction would be absent, although this absence would be because of Rule 17(b). It is not clear whether subject-matter jurisdiction is a valid concern in determining where an action "might have been brought." In *Van Dusen*, the Supreme Court wrote that "There is no valid reason for reading the words 'where it might have been brought' to narrow the range of permissible federal forums beyond those permitted by *federal venue statutes* which, after all, are generalized attempts to promote the same goals of convenience and fairness." 376 U.S. at 621–22, 84 S.Ct. at 812 (emphasis added). Of course, this would not mean that subject-matter jurisdiction would be out of the § 1404(a) equation; rather the court would consider that issue in determining whether § 1404(a)'s other requirement is met: that the transfer not be against "the interest of justice." *Id.* at 625, 84 S.Ct. at 814 ("although Rule 17(b) may be irrelevant to a determination of where an action 'might have been brought,' the effect of the Rule may necessarily render a change of venue against the 'interest of justice.' ").

▬ Nevertheless, the court will assume that subject-matter jurisdiction is a valid concern in determining where an action "might have been brought." From the face of the complaint, there is no question that the current parties are completely diverse, and thus there is no question that the complaint, as written, would have conferred diversity jurisdiction on an Alabama federal court. Murray's point, however, is that an Alabama court, in determining the presence of diversity jurisdiction, would have to look beyond the current parties and would have to consider the citizenship of the BASS association as well. The difficulty with Murray's argument is that whether BASS is and ever was an association is a highly disputed fact. Defendants maintain that BASS has never been an association; they contend that, rather than being an association or group with members, BASS was solely owned by Ray Scott, who then later incorporated it as he had a right to do as its sole owner. It is therefore not clear and undisputed that Rule 17(b) would even apply had this case been brought in Alabama.

Moreover, whether BASS is and ever was an association is a critical, if not determinative, fact in the outcome of this litigation. In resolving the procedural issue of venue, Murray would therefore have the court determine a fact that goes to the heart of the merits of the litigation: whether BASS is an entity solely owned by Scott (which he had the right to incorporate) or an association that could be incorporated only with the direct or indirect approval of its membership. Such resolution would be both impractical and imprudent, for it would mean that the court would have to try the case on the merits to determine whether it should be transferred, an effort that would not only be at odds with § 1404(a)'s essentially housekeeping purpose, *Van Dusen*, 376 U.S. at 636, 84 S.Ct. at 819 ("both the history and purposes of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms."), but would also essentially defeat the need for a trans-

fer or re-transfer determination in the first place.

Here, where the complaint on its face confers subject-matter jurisdiction and where to go behind that face would require that the court resolve the merits of the case in whole or in part, the court's might-have-been-brought inquiry should be at an end.

■ Nevertheless, the destruction of subject-matter jurisdiction by the transfer is a valid concern of § 1404(a), just not in the format presented by Murray: it is not whether subject-matter jurisdiction would have existed had the case originally been brought in Alabama, but rather whether *the transfer itself* will result in the dismissal of the lawsuit in the new forum for lack of jurisdiction. The § 1404(a) concern is whether transfer would be "in the interest of justice." Alabama law will not be relevant once this re-transfer motion is dealt with; the governing law remains that of the State of the transferor court, following a proper transfer. *Van Dusen*, 376 U.S. at 633, 84 S.Ct. at 818. Thus, there is no possibility that the Alabama *McNulty* rule will destroy diversity of citizenship in the pending case, and, consequently, no contravention of § 1404(a)'s "in the interest of justice" language.

### 2. CLASS–ACTION APPROACH

■ In any event, this case is plead as a Fed.R.Civ.P. 23.2 class action, which is an alternate method for bringing claims by or against the members of an unincorporated association into federal court.[2] *Calagaz v. Calhoon*, 309 F.2d 248 (5th Cir.1962) (Rules 17(b) and 23 provide "alternate

methods of bringing unincorporated associations into court."). This court agrees with the decision of the Kansas district court that, because it is sufficient that there is complete diversity between plaintiff class representatives and defendants in a regular class action under Rule 23.2, *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969) (Rule 23); *Kerney v. Fort Griffin Fandangle Ass'n, Inc.*, 624 F.2d 717, 720 (5th Cir.1980) (Rule 23.2), and because there is no requirement in Rule 23.2 that state substantive law be consulted as to the capacity of the members of the association to sue, the case "might have been brought" in this district court on that basis, with the requirements for diversity jurisdiction amply met. *Murray v. Sevier*, 156 F.R.D. 235, 251–255 (D.Kan.1994).

### 3. CHANGED CIRCUMSTANCES

■ Murray also argues that re-transfer to Kansas is appropriate because of changed circumstances during the period of time since the original transfer. Although re-transfer could be proper because of significant "changed circumstances," *Koehring Co. v. Hyde Constr. Co.*, 382 U.S. 362, 365, 86 S.Ct. 522, 524, 15 L.Ed.2d 416 (1966), the changed circumstances cited by Murray do not invoke such concern. Murray argues that the counterclaim asserted against him and an alleged failure to agree to have the case decided summarily constitute changed circumstances that invite re-transfer. As the Eleventh Circuit has not adopted a standard for considering re-transfer based on changed circum-

---

**2.** Rule 23.2 provides:

"An action brought by or against the members of an unincorporated association as a class by naming certain members as representative parties may be maintained only if it appears that the representative parties will fairly and adequately protect the inter-

ests of the association and its members. In the conduct of the action the court may make appropriate orders corresponding with those described in Rule 23(d), and the procedure for dismissal or compromise of the action shall correspond with that provided in Rule 23(e)."

stances, this court looks to the Fifth Circuit's rule, expressed in *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983), in which that court refused to retransfer except "under the most impelling and unusual circumstances or if the transfer order is manifestly erroneous." A more lenient standard for retransfer would subject the litigants to an unending cycle of venue transfers and the courts to the prospect of much-delayed litigation. When "unanticipatable post-transfer events frustrate the original purpose for transfer," retransfer is proper. *Id.* A counterclaim is not unanticipatable in the least, nor is the inability of the case to be decided summarily. Neither of these contingencies frustrates the purpose of the original transfer, and that transfer shall stand.

## B. DUE–PROCESS ARGUMENT

There is also no merit to Murray's second major line of argument, that this court must have personal jurisdiction over him for the transfer to be proper. Essentially, the argument is that, despite the provisions of § 1404(a), the court is also restricted by the due process clause, which, he maintains, does not allow transfer to a district in which plaintiff does not have "minimum contacts" under *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However,

as the court will explain, there is no due-process concern, at least to the level of requiring minimum contacts with the new forum, for plaintiff when a case is transferred under § 1404(a).

In no case cited by Murray or discovered by this court has the lack of personal jurisdiction over a plaintiff been a unilateral preclusion to transfer.[3] However, this is not dispositive, as there also is no case that puts forward an argument that supports completely precluding use of the *International Shoe* minimum-contacts analysis for plaintiffs as well as defendants.[4]

In *International Shoe*, the Supreme Court explained: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316, 66 S.Ct. at 158. Thus, the minimum-contacts requirement turns on the need to subject a party "to a judgment in personam." The minimum-contacts concerns inhere when a party is haled into court without its consent upon pain of a default judgment. These concerns are not present when a plaintiff is forced to litigate his case in another forum. Barring a counterclaim, plaintiff will not have judg-

---

**3.** Even the authority cited by Murray for this proposition, a law review article, recognizes that this is not the state of the law. Steinberg, *The Motion to Transfer and the Interests of Justice*, 66 Notre Dame L.Rev. 448, 516 (1990) ("Under the current interpretation of section 1404, however, a court conceivably may transfer a case to any district—even a district with which the plaintiff possesses no contacts."); *see also* Michael J. Waggoner, *Section 1404(a), "Where It Might Have Been Brought": Brought by Whom?*, 1988 BYU L.Rev. 67, 71 (1988). While both articles advocate for an interpretation of § 1404(a) that prevents local plaintiffs from being trans-

ferred to distant forums, both authors couch their argument as a shift in the law.

**4.** The Middle District of Florida, without any significant doctrinal analysis, dismissed the argument that a transferee court must have personal jurisdiction over a plaintiff for proper venue. *R.E.F. Golf Co. v. Roberts Metals, Inc.*, 1992 WL 161041, at *2 (M.D.Fla. June 29, 1992), citing *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed.Cir. 1990) (cited for general proposition that venue is proper wherever the case could have been brought against a defendant; the court does not reach the issue in this case).

ment entered against him in the new forum; even with a counterclaim, plaintiff chose to initiate litigation enabling the counterclaim. In no sense is plaintiff unilaterally being haled into court to defend. Indeed, plaintiff's original choice of forum is preserved in at least one way: the law of the transferor forum will govern in the litigation rather than the law of the new forum. Therefore, the *International Shoe* minimum-contacts analysis is not necessary. The requirement that a litigant have minimum contacts with the forum simply does not exist for an ordinary plaintiff.

The thrust of the cases cited by Murray is that due-process concerns do inhere in individuals, not just defendants, and that some level of due process or fairness is necessary to protect that interest. For example, Murray cites *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), which holds that the minimum-contacts analysis is not required for absentee class plaintiffs because there are less burdens placed on them than defendants, who must defend or be subject to a default judgment. *Id.* at 811, 105 S.Ct. at 2974. Absentee class plaintiffs are adequately represented by class counsel and are not generally liable for attorneys' fees or sanctions or counterclaims arising from the litigation. *Id.* at 810, 105 S.Ct. at 2973. However, if the forum wishes to bind absentee plaintiffs to the resolution of a claim, it must provide "minimum procedural due process protection," including notice and an opportunity to be heard, the ability to opt out, and adequate class representation, at least in class actions requesting money damages. *Id.* at 811–12, 105 S.Ct. at 2974.

To the extent Murray is seeking minimum *procedural* due-process protection, § 1404(a) provides such. The section identifies three broad categories of considerations that the trial judge should analyze under a motion to transfer: convenience of the parties, convenience of witnesses, and the interest of justice. Obviously, these factors are refined to fit the facts of the particular case and can involve consideration of a vast array of particular issues. Generally, plaintiff's choice of forum is accorded considerable deference, *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989), such that defendant bears the burden of showing that the requested transfer forum is substantially more convenient than the original forum. *Id.* Murray cannot complain about lack of procedural due process.

## III. CONCLUSION

Finally, in keeping with the *Christianson* principle outlined at the inception of this order, limiting the nature of the review of a transferring court's decision, this court concludes that the Kansas district court's transfer decision was "plausible," based on a proper balancing of the factors under § 1404(a), and will therefore deny Murray's motion to re-transfer. It would be improper to scrutinize the Kansas district court's balance of the factors under § 1404(a), but it seems to have considered a range of concerns that lean in favor of transfer: a substantial amount of discovery in this case would center in Alabama, litigation in Alabama would seem to be more convenient for critical witnesses in the impending trial, many of the class members reside in Alabama, and most of the relevant occurrences took place in Alabama. The Kansas court expressed concern over the availability of personal jurisdiction over all of the defendants in Kansas and found easy execution of any judgment more probable in Alabama. It found transfer to this district proper, and there is no reason to question its decision.

Accordingly, it is ORDERED that the motion to re-transfer, filed by plaintiff

Bradley Murray on August 22, 2001 (Doc. no. 587), is denied.